LARKIN v WAYNE PROSECUTOR

BEEBE v WAYNE PROSECUTOR

1. ABORTION—CRIMINAL LAW—CONSTITUTIONAL LAW.

The constitutionality of the Michigan criminal abortion statute is discussed and decided in *People v Bricker,* 389 Mich 524 (1973) (MCLA 750.14).

2. ABORTION—STATUTES—SALE OF ABORTIFACIENTS—PHYSICIANS AND SURGEONS—PRESCRIPTIONS—CONSTITUTIONAL LAW.

Statute prohibiting advertising and sale of abortifacients is constitutional because it excepts from its provisions the written prescription of an established practicing physician of the place where the sale is made and that statute merely effectuates the policy that the abortion decision is a medical decision to be made by a physician in consultation with his patient (MCLA 750.15).

3. ABORTION — STATUTES — ASSAULTIVE ABORTION — CONSTITUTIONAL LAW — DUE PROCESS.

Statute prohibiting the wilful killing of an unborn quick child is limited in its scope to abortions caused by felonious assault upon the mother, which result in the death of an unborn quick child *en ventre sa mere;* so limited, the act does not offend the Due Process Clause of the Fourteenth Amendment (US Const, Am XIV; MCLA 750.322).

4. STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW.

Michigan Supreme Court has a duty to read a Michigan act to be consistent with the Federal Constitution, if such interpretation can be made without doing violence to the language used by the Legislature.

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Abortion § 1 *et seq.*
[2, 3] 1 Am Jur 2d, Abortion § 2 *et seq.*
[4] 16 Am Jur 2d, Constitutional Law §§ 58, 59.
[5–7] 1 Am Jur 2d, Abortion §§ 5–8.
[8] 61 Am Jur 2d, Physicians and Surgeons § 48 *et seq.*

5. ABORTION—ASSAULTIVE ABORTION—MANSLAUGHTER BY ABORTION—
   STATUTES—CHILD—VIABLE CHILD—WORDS AND PHRASES.

   Word "child" as used in statutes punishing assaultive abortion
   and manslaughter by abortion means a viable child in the
   womb of its mother; that is, an unborn child whose heart is
   beating, who is experiencing electronically measurable brain
   waves, who is discernably moving, and who is so far developed
   and matured as to be capable of surviving the trauma of birth
   with the aid of the usual medical care and facilities available in
   the community (MCLA 750.322, 750.323).

6. CONSTITUTIONAL LAW—FETUS—VIABLE CHILD—PRESUMPTIONS—
   MANSLAUGHTER BY ABORTION—STATUTES—BURDEN OF PROOF.

   As a matter of Federal constitutional law, a fetus is conclusively
   presumed not to be viable within the first trimester of preg-
   nancy; beyond that point, the burden is upon the people in a
   prosecution for manslaughter by abortion to prove beyond a
   reasonable doubt that the subject of the manslaughter was in
   fact a viable child *en ventre sa mere;* and so interpreted, that
   statute is not unconstitutional (MCLA 750.323).

7. ABORTION—VIABLE CHILD—CRIMINAL LAW.

   Intentional destruction of a viable unborn child remains a crimi-
   nal offense in Michigan.

8. PHYSICIANS AND SURGEONS—STATUTES—ABORTION—MANSLAUGHTER
   —MANSLAUGHTER BY ABORTION—CONSTITUTIONAL LAW.

   Portion of the statute prohibiting unlawful medical conduct
   which provides that unprofessional and dishonest conduct in-
   cludes "[t]he procuring, aiding or abetting in procuring a crimi-
   nal abortion" insofar as it has reference to the offense of
   manslaughter as defined in the statute punishing manslaughter
   by abortion remains constitutionally valid (MCLA 338.53,
   750.323).

Appeal from Wayne, Charles Kaufman, J., and
from Court of Appeals prior to decision. Submitted
April 2, 1973. (No. 2 April Term 1973, Docket No.
54,438.) Decided June 18, 1973.

Complaint by Duane R. Larkin against the
Wayne County Prosecutor and the Attorney Gen-
eral for a declaratory judgment that the abortion
statute and other related statutes are void and for

an injunction enjoining enforcement of those statutes. Judgment for plaintiff and injunction granted. Defendants appealed to the Court of Appeals. The Supreme Court, on its own motion, granted leave to appeal prior to decision by the Court of Appeals. Affirmed in part, reversed in part.

*Barbara G. Robb, Anna J. Diggs, Claudia Morcom, Judith Munger, Marijana Relich,* and *Sally Staebler,* for plaintiff.

*William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Division, *W. Leo Cahalan,* Chief, Civil Division, and *Patricia Boyle* and *Rheo C. Marchand,* Assistants Prosecuting Attorney, for defendants.

Appeal from Wayne, Charles Kaufman, J., and from Court of Appeals prior to decision. Submitted April 2, 1973. (No. 3 April Term 1973, Docket No. 54,438.) Decided June 18, 1973.

Complaint by Lorraine Beebe, individually and on behalf of all others similarly situated, against the Wayne County Prosecutor and the Attorney General, for a declaratory judgment that the abortion statute and other related statutes are void and for an injunction enjoining enforcement of those statutes. Maureen Fedeson and Richard V. Jaynes appointed guardians ad litem of the class of all the unborn persons in the State of Michigan and permitted to intervene. Judgment for plaintiffs and injunction granted. Defendants appealed to the Court of Appeals. The Supreme Court, on its own motion, granted leave to appeal prior to decision by the Court of Appeals. Affirmed in part, reversed in part.

*Barbara G. Robb, Anna J. Diggs, Claudia Morcom, Judith Munger, Marijana Relich,* and *Sally Staebler,* for plaintiffs.

*William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Division, *W. Leo Cahalan,* Chief, Civil Division, and *Patricia Boyle* and *Rheo C. Marchand,* Assistants Prosecuting Attorney, for defendants.

*Arthur F. Barkey,* for intervenors.

T. E. BRENNAN, J. The purpose of this opinion is to determine the impact of *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973); and *Doe v Bolton,* 410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973) upon various criminal and regulatory statutes in Michigan.

## THE CASES

The two cases before us are actions for declaratory and injunctive relief commenced in the Circuit Court for Wayne County. The circuit judge granted the relief sought in both cases, and we granted leave *sua sponte,* staying the order of the circuit court on October 19, 1972. In the interim, and prior to submission in this court, the *Wade* and *Bolton* cases were decided by the United States Supreme Court.

## ISSUES

At issue here are four substantive criminal statutes and one regulatory act. They will be dealt with separately.

## MCLA 750.14—CRIMINAL MISCARRIAGE

MCLA 750.14; MSA 28.204, provides as follows:

"750.14 Miscarriage, administering with intent to procure

"Sec. 14. ADMINISTERING DRUGS, ETC., WITH INTENT TO PROCURE MISCARRIAGE—Any person who shall wilfully administer to any pregnant woman any medicine, drug, substance or thing whatever, or shall employ any instrument or other means whatever, with intent thereby to procure the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, shall be guilty of a felony, and in case the death of such pregnant woman be thereby produced, the offense shall be deemed manslaughter.

"In any prosecution under this section, it shall not be necessary for the prosecution to prove that no such necessity existed."

The constitutionality of this section is discussed and decided in *People v Bricker,* 389 Mich 524 (1973), decided this day.

## MCLA 750.15—ADVERTISING OR SALE OF ABORTIFACIENTS

MCLA 750.15; MSA 28.205, provides:

"750.15 Abortion, drugs or medicine, advertising or sale to procure

"Sec. 15. SELLING DRUGS, ETC., TO PROCURE ABORTION—Any person who shall in any manner, except as hereinafter provided, advertise, publish, sell or publicly expose for sale any pills, powder, drugs or combination of drugs, designed expressly for the use of females for the purpose of procuring an abortion, shall be guilty of a misdemeanor.

"Any drug or medicine known to be designed and expressly prepared for producing an abortion, shall only

be sold upon the written prescription of an established practicing physician of the city, village, or township in which the sale is made; and the druggist or dealer selling the same shall, in a book provided for that purpose, register the name of the purchaser, the date of the sale, the kind and quantity of the medicine sold, and the name and residence of the physician prescribing the same."

Unlike the criminal miscarriage law, the statute prohibiting advertising and sale of abortifacients excepts from its provisions the written prescription of an established practicing physician of the place where the sale is made.

Whether the limitation as to the place of the physician's practice is unduly restrictive, so as to constitute an arbitrary, unreasonable and invalid exercise of the police power is not now before us. For the purpose of this opinion, it is sufficient to conclude that *Roe v Wade* does not address itself to the power of the state to regulate the advertising and sale of abortifacients. Indeed, MCLA 750.15; MSA 28.205, would appear to be entirely consistent with the rationale of *Roe v Wade.* It makes the sale of drugs or medicines designed to produce abortion a medical rather than a commercial activity.

*Roe v Wade* repeatedly asserts that the abortion decision is a medical decision, to be made by a physician in consultation with his patient. MCLA 750.15; MSA 28.205, merely effectuates that policy. It is constitutional.

## *MCLA 750.322—ASSAULTIVE ABORTION*

MCLA 750.322; MSA 28.554, provides as follows:

"750.322 Same; wilful killing of unborn quick child

"Sec. 322. WILFUL KILLING OF UNBORN QUICK
CHILD—The wilful killing of an unborn quick child by
any injury to the mother of such child, which would be
murder if it resulted in the death of such mother, shall
be deemed manslaughter."

This is a very narrow statute which is related
only peripherally to the issues decided in *Roe v
Wade* and *Doe v Bolton.*

An injury to the mother which would be murder
if resulting in the death of the mother is necessar-
ily an injury caused by a felonious assault. We
hold that MCLA 750.322; MSA 28.554, is limited in
its scope to abortions caused by felonious assault
upon the mother, which result in the death of an
unborn quick child *en ventre sa mere.* "Quick
child" will be defined in the next section of this
opinion. So limited, the act does not offend the Due
Process Clause of the Fourteenth Amendment.

## *MCLA 750.323—MANSLAUGHTER BY*
*ABORTION*

MCLA 750.323; MSA 28.555, states:

"750.323 Same; death of quick child or mother from
use of medicine or instrument
"Sec. 323. DEATH OF QUICK CHILD OR MOTHER
FROM USE OF MEDICINE, ETC., WITH INTENT TO
DESTROY SUCH CHILD—Any person who shall ad-
minister to any woman pregnant with a quick child any
medicine, drug or substance whatever, or shall use or
employ any instrument or other means, with intent
thereby to destroy such child, unless the same shall
have been necessary to preserve the life of such mother,
shall, in case the death of such child or of such mother
be thereby produced, be guilty of manslaughter.
"In any prosecution under this section, it shall not be
necessary for the prosecution to prove that no such
necessity existed."

This statute, like MCLA 750.322; MSA 28.554, uses the term "quick child". It also uses the terms "death" and "mother". Both statutes are found in the Penal Code under the designation of Homicide. In both instances, the crime is defined as manslaughter. Manslaughter is a form of homicide.

It is a serious crime both at common law and under our statutes because manslaughter involves the destruction of viable human life.

There can be no manslaughter of an inanimate object. Neither can manslaughter be predicated upon the destruction of any form of animal life which is not human.

It follows that statutes proscribing manslaughter by abortion are designed to protect human life and carry the necessary implication that that life, the destruction of which is punishable as manslaughter, is human life.

Neither MCLA 750.323; MSA 28.555, nor MCLA 750.322; MSA 28.554, attempts to define precisely when human life begins.

Both are predicated upon the existence of human life, in the womb of the mother, as a matter of biological fact. We do not understand the use of the phrase "quick child" as a legislative attempt to define a point in time when human life begins.

*Roe v Wade* defines "quickening" as "the first recognizable movement of the fetus *in utero,* appearing usually from the 16th to 18th week of pregnancy". This would place the phenomenon of quickening sometime after the first trimester.

But quickening is only evidence of life. It is not conclusive. It is now known that a fetus is capable of movement long before that movement is felt by the mother. Quickening is nothing more than discernable movement.

The use of the adjective "quick" to modify the

noun "child", describes but does not define the subject of the offense of manslaughter.

Thus, not every child in its mother's womb is protected by the act; only a *quick* child, a child causing discernable movement.

But not every fetus discernably moving *in utero* is protected by the act, for it punishes only the killing of a quick *child.* By use of the word child, the Legislature has made clear that the offense consists of destroying a human life.

In *Roe v Wade,* the United States Supreme Court has held that the state has a compelling interest in the protection of human life from and after the point of viability:

> "With respect to the State's important and legitimate interest in potential life, the 'compelling' point is at viability. This is so because the fetus then presumably has the capability of meaningful life outside the mother's womb. State regulation protective of fetal life after viability thus has both logical and biological justifications. If the State is interested in protecting fetal life after viability, it may go so far as to proscribe abortion during that period except when it is necessary to preserve the life or health of the mother."

Our duty is to read the Michigan act to be consistent with the Federal Constitution, if such interpretation can be made without doing violence to the language used by the Legislature.

We hold that the word child as used in MCLA 750.322; MSA 28.554, and MCLA 750.323; MSA 28.555, means a viable child in the womb of its mother; that is, an unborn child whose heart is beating, who is experiencing electronically measurable brain waves, who is discernably moving, and who is so far developed and matured as to be capable of surviving the trauma of birth with the

aid of the usual medical care and facilities available in the community.

We are well aware that this definition of viability, not being expressed in terms of months or weeks, lacks the exactness which some would have us pronounce.

But in leaving the issue of viability as a question of fact to be determined in every prosecution under these statutes, we do not create any new problems for the trial courts and the juries drawn therein.

The question of whether the deceased was a living human being at the time of an alleged homicide, like the cause of death itself, is a proper subject of adversary litigation. Scientific and lay evidence is admissible, and the jury can bring to its deliberations its experience in the ordinary affairs of life.

By reason of *Roe v Wade,* we are compelled to rule that as a matter of Federal constitutional law, a fetus is conclusively presumed not to be viable within the first trimester of pregnancy.

Beyond that point, the burden is, of course, upon the people in a prosecution for manslaughter by abortion to prove beyond a reasonable doubt that the subject of the manslaughter was in fact a viable child *en ventre sa mere.*

As interpreted herein, MCLA 750.323; MSA 28.555, is not unconstitutional.

## *MCLA 338.53—UNLAWFUL MEDICAL CONDUCT*

MCLA 338.53; MSA 14.533, provides in part, as follows:

"Sec. 3. * * *
"*Unprofessional and dishonest conduct, definition.*

Sixth. The board of registration in medicine may refuse to issue or continue a certificate of registration or license provided for in this section to any person guilty of grossly unprofessional and dishonest conduct. The words 'unprofessional and dishonest conduct,' as used in this act, are hereby declared to mean:

"(a) The procuring, aiding or abetting in procuring a criminal abortion; * * *

"*Violation of act; conviction of crime; penalty.* Seventh. It shall be a misdemeanor for any person to be guilty of 'unprofessional and dishonest conduct' as defined in this act. Any person who has been issued a certificate of registration or license under this act, and who shall be charged with the commission of such misdemeanor, shall be tried in a court of competent criminal jurisdiction, and upon conviction thereof shall be fined for each offense not to exceed $250.00, or shall be imprisoned in the county jail not to exceed 3 months, or may be both fined and imprisoned, in the discretion of the court. The creation of such misdemeanor by this act shall not be construed to supersede any existing remedy or punishment, whether civil or criminal, for any act embraced within the provisions of this act, but shall be construed to be in addition thereto."

As set forth above, the intentional destruction of a viable unborn child remains a criminal offense in Michigan. We hold that:

"(a) The procuring, aiding or abetting in procuring a criminal abortion; * * * "

insofar as it has reference to the offense of manslaughter as defined in MCLA 750.323; MSA 28.555, remains constitutionally valid.

### OTHER ISSUES

A number of other issues have been raised in these proceedings, including the serious problem of protecting physicians and their paraprofessional

supportive personnel from liability for refusal to perform abortions. Such matters are beyond the scope of this litigation, and must be left to another day.

## CONCLUSION

In light of the declaratory relief contained in this opinion, we decline to issue any injunction against the named defendants, being of the view that such relief is not required.

No costs, a public question being involved.

T. M. KAVANAGH, C. J., and SWAINSON, WILLIAMS, and M. S. COLEMAN, JJ., concurred with T. E. BRENNAN, J.

Justices T. G. Kavanagh and Levin also concur except that they would expressly state that unlawful medical conduct (MCLA 338.53; MSA 14.533) may include a violation of MCLA 750.14; MSA 28.204 as well as a violation of MCLA 750.323; MSA 28.555, and except that they see no need to define "quick child" or "viability" and concur in the result reached by the majority under the heading "manslaughter by abortion" on the rationale of *People v Bricker* decided today.

T. G. KAVANAGH and LEVIN, JJ.