PEOPLE v BRICKER

1. CONSTITUTIONAL LAW—SUPREME COURT—ABORTION—PHYSICIANS AND SURGEONS.

Under the Supremacy Clause, the Michigan Supreme Court is bound by decisions of the United States Supreme Court in *Roe v Wade,* 410 US 113 (1973) and *Doe v Bolton,* 410 US 179 (1973); under the principles enunciated therein, Michigan's criminal abortion statute cannot stand as relating to abortions in the first trimester of a pregnancy as authorized by the pregnant woman's attending physician in exercise of his medical judgment (US Const, Art VI; MCLA 750.14).

2. CONSTITUTIONAL LAW—SUPREME COURT—ABORTION—STATUTES.

Judicial opinions filed by the United States Supreme Court in *Roe v Wade,* 410 US 113 (1973) and *Doe v Bolton,* 410 US 179 (1973) are binding upon the Michigan Supreme Court under the Supremacy Clause; but, those opinions do not *decide* any case other than the cases of *Roe* and *Doe;* they do not purport to construe the Michigan abortion statutes (US Const, Art VI).

3. CONSTITUTIONAL LAW—SUPREME COURT—STATUTES.

Michigan Supreme Court is duty bound under the Michigan Constitution to preserve the laws of the State of Michigan and to that end to construe them if it can so that they conform to Federal and state constitutional requirements.

4. STATUTES—CONSTRUCTION—SUPREME COURT—CONSTITUTIONAL LAW.

Michigan Supreme Court's construction of Michigan statutes in a manner which does not offend the Federal constitutional right recognized in decisions of the United States Supreme Court in *Roe v Wade,* 410 US 113 (1973) and *Doe v Bolton,* 410 US 179

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 11] 1 Am Jur 2d, Abortion § 1 *et seq.*
20 Am Jur 2d, Courts §§ 6–15.
[6] 1 Am Jur 2d, Abortion §§ 9, 18, 20.
[7–9] 16 Am Jur 2d, Constitutional Law § 167.
[10] 1 Am Jur 2d, Abortion §§ 5–8.

(1973) is determinative until changed by the Michigan Legislature or the initiative of the people of the State of Michigan.

5. STATUTES—CONSTRUCTION—SUPREME COURT.

Michigan Supreme Court is not obliged to adhere to its earlier constructions of Michigan statutes or by other courts of their similar statutes.

6. ABORTION—HEALTH—STATUTES—CONSTITUTIONAL LAW.

The central purpose of legislation on abortion is clear enough—to prohibit all abortions except those required to preserve the health of the mother; exceptions required by the United States Supreme Court can properly be read into the statutes to preserve their constitutionality.

7. COURTS—SUPREME COURT—PUBLIC POLICY—CONSTITUTIONAL LAW.

The public policy of the State of Michigan is a mandate upon the Michigan Supreme Court and its duty to enforce that mandate is as clear as is its duty to comply with decisions of the United States Supreme Court construing the Federal Constitution.

8. CONSTITUTIONAL LAW—PUBLIC POLICY—LEGISLATURE—GOVERNOR—ATTORNEY GENERAL—COURTS.

The public policy of the State of Michigan is to be found in the declarations and deeds of its people; these find concrete expression in the constitution adopted by the people, the laws enacted by the Legislature, the acts of the Governor, the Attorney General, others exercising executive power, the decisions of Michigan courts, and the vote of the people.

9. ABORTION—PUBLIC POLICY—CONSTITUTIONAL LAW.

To proscribe abortion is the public policy of the State of Michigan; this public policy must now be subordinated to Federal constitutional requirements.

10. ABORTION—MISCARRIAGE—PHYSICIANS AND SURGEONS—HEALTH.

The Michigan statute prohibiting abortions shall not apply to "miscarriages" authorized by a pregnant woman's attending physician in the exercise of his medical judgment; however, a physician may not cause a miscarriage after viability except where necessary, in his medical judgment, to preserve the life or health of the mother (MCLA 750.14).

11. ABORTION—CONSTITUTIONAL LAW—PHYSICIANS AND SURGEONS—STATUTES—CLASSIFICATION.

The excision from the abortion statute, by constitutional construction, of a certain class, *viz.* medical professionals, neither

affects the balance of the classes coming within the ambit of the clear legislative intent nor exonerates the same from criminal responsibility; but the Michigan Supreme Court cannot accept as a necessary implication that, because doctors may perform abortions under prescribed circumstances, means that anyone who has or will perform an abortion can do so with impunity.

Appeal from Court of Appeals, Division 2, Danhof, P. J., and T. M. Burns and Van Valkenburg, JJ., affirming Oakland, Frederick C. Ziem, J. Submitted April 2, 1973. (No. 1 April Term 1973, Docket No. 54,434.) Decided June 18, 1973.

42 Mich App 352 affirmed.

Samuel Bricker was convicted of conspiracy to commit abortion. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Frank R. Knox,* Chief Appellate Counsel, for the people.

*I. Goodman Cohen* and *Michael S. Friedman,* for defendant.

T. M. KAVANAGH, C. J. Defendant, charged with conspiracy[1] to commit an abortion,[2] was convicted upon a jury verdict and sentenced to one to four years in prison. The Court of Appeals affirmed, 42 Mich App 352. We granted leave to appeal, 388 Mich 788 (1972).

Complainant, Tabalea Drader, testified that some time in September of 1967 she was contacted and solicited for an abortion. On October 2, 1967, a

---

[1] MCLA 750.157a; MSA 28.354(1).

[2] MCLA 750.14; MSA 28.204.

policewoman, in the place of Mrs. Drader, was taken to defendant Bricker's apartment, where defendant met her and explained the procedures to be followed. Before anything could be done, officers entered and arrested defendant.

The Court of Appeals, noting defendant is not a physician, concluded that as to non-physicians, "there is sufficient state interest in both the protection of the health and safety of a pregnant woman and the protection of society as a whole from the practice of medicine by persons not licensed as physicians to justify continued application of the abortion statute to those abortions performed by non-physicians".

Unfortunately, this conclusion, though embodying the spirit of the doctrine of *Roe v Wade, infra,* takes no note of the constitutional defect in the statute.

Under the Supremacy Clause we are bound by the decisions of the United States Supreme Court in *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), and other cases. Under the principles enunciated therein, our criminal abortion statute (MCLA 750.14; MSA 28.204) cannot stand as relating to abortions in the first trimester of a pregnancy as authorized by the pregnant woman's attending physician in exercise of his medical judgment. Because Tabalea Drader was well within the initial trimester deadline on October 2, 1967,[3] no abortion performed upon her at that time by a licensed physician would have been criminal.

That is not the case before us. Defendant is not and was not a licensed physician. Thus, the pivotal question is whether our penal code provisions proscribe defendant's conduct, notwithstanding the

---

[3] Complainant gave birth on May 1, 1968 to a full-term baby.

constitutionally engrafted exemption dictated by *Roe v Wade, supra.*

We must recognize at the outset that the judicial opinions filed by the United States Supreme Court in *Roe* and *Doe*[4] are binding upon us under the Supremacy Clause. Those opinions do not, however, *decide* any case other than the cases of *Roe* and *Doe.* This is decisionally important in this case because *Roe* and *Doe* do not purport to construe the Michigan abortion statutes. They proceed to decision upon a construction of the Texas *(Roe)* and Georgia *(Doe)* statutes.

We are duty bound under the Michigan Constitution to preserve the laws of this state and to that end to construe them if we can so that they conform to Federal and state constitutional requirements. The United States Supreme Court would be the first to acknowledge that our construction of our statutes in a manner which does not offend the Federal constitutional right recognized in *Roe* and *Doe* is determinative until changed by the Michigan Legislature or the initiative of the people of this state.

Nor are we obliged to adhere to earlier constructions by this Court of our statutes or by other courts of their similar statutes.

It is often said that in construing a statute a court seeks to determine the intent of the Legislature. Frequently there is truthfully no intent because the question concerns a situation not in contemplation when the Legislature acted.[5]

---

[4] *Doe v Bolton,* 410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973)—Reporter.

[5] Although it could not seriously be claimed that the framers of the Fourteenth Amendment had in mind and intended to prohibit state regulation of abortion, this did not preclude the decisions of the United States Supreme Court in *Roe* and *Doe.* Similarly, while the Legislature concededly did not have in mind the *Roe/Doe* decisions and the need for a response, this does not preclude us from preserving the framework of Michigan law until the Legislature can act.

When the Legislature adopted the statutes prohibiting most abortions there was little or no reason to question their constitutionality. The medical and other developments which influenced the United States Supreme Court to decide *Roe* and *Doe* as it did were far ahead.

Now that the United States Supreme Court has spoken concerning the constitutionality of state abortion laws, we seek to save what we can of the Michigan statutes.

The central purpose of this legislation is clear enough—to prohibit all abortions except those required to preserve the health of the mother. The Supreme Court now requires other exceptions. They can properly be read into the statutes to preserve their constitutionality.

The public policy of this state is a mandate upon us. Our duty to enforce that mandate is as clear as is our duty to comply with decisions of the United States Supreme Court construing the Federal Constitution.

The public policy of this state is to be found in the declarations and deeds of its people. These find concrete expression in the constitution adopted by the people, the laws enacted by the Legislature, the acts of the Governor, the Attorney General, others exercising executive power, the decisions of our courts, and the vote of the people. Proponents of abortion reform took a case to the people last November and lost.

It is the public policy of the state to proscribe abortion. This public policy must now be subordinated to Federal Constitutional requirements.

In light of the declared public policy of this state and the changed circumstances resulting from the Federal constitutional doctrine elucidated in *Roe* and *Doe,* we construe § 14 of the penal code to

mean that the prohibition of this section shall not apply to "miscarriages" authorized by a pregnant woman's attending physician in the exercise of his medical judgment; the effectuation of the decision to abort is also left to the physician's judgment; however, a physician may not cause a miscarriage after viability except where necessary, in his medical judgment, to preserve the life or health of the mother.

Our reasoning and result is neither novel nor unprecedented. Our eminent Mr. Justice Cooley, in his work on Constitutional Limitations, addressed the effect of judicial ruling holding a statute unconstitutional in part and concludes at pp 215–216 (5th ed):

"A legislative act may be entirely valid as to some classes of cases, and clearly void as to others. A general law for the punishment of offences, which should endeavor to reach, by its retroactive operation, acts before committed, as well as to prescribe a rule of conduct for the citizen in the future, would be void so far as it was retrospective; but such invalidity would not affect the operation of the law in regard to the cases which were within the legislative control. A law might be void as violating the obligation of existing contracts, but valid as to all contracts which should be entered into subsequent to its passage, and which therefore would have no legal force except such as the law itself would allow. In any such case the unconstitutional law must operate as far as it can, and it will not be held invalid on the objection of a party whose interests are not affected by it in a manner which the constitution forbids. If there are any exceptions to this rule, they must be of cases only where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others."

The excision from the statute, by constitutional construction, of a certain class, *viz.* medical professionals, neither affects the balance of the classes coming within the ambit of the clear legislative intent nor exonerates the same from criminal responsibility. In short, we cannot accept as a necessary implication that, because doctors may perform abortions under prescribed circumstances, means that anyone who has or will perform an abortion can do so with impunity.

The Arkansas Supreme Court in the case of *May v State,* — Ark —; 492 SW2d 888 (1973) held that insofar as the Arkansas statute prohibits abortions by laymen, the statutes were untouched by *Roe v Wade, supra,* and *Doe v Bolton,* 410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973).

The United States Supreme Court recently said:

"Petition for writ of certiorari to the Supreme Court of Indiana denied for want of standing of the petitioner. *Doremus et al. v. Board of Education of the Borough of Hawthorne et al.* 342 U.S. 429; 72 S Ct 394; 96 L Ed 475 [1952]. Mr. Justice Douglas would deny certiorari on the grounds that petitioner, who was convicted of performing an abortion, is not a doctor and that the decisions of this Court in *Roe v. Wade,* 410 U.S. —; 35 L Ed 2d 147; 93 S Ct 705 and *Doe v. Bolton,* 410 U.S. —; 35 L Ed 2d 201; 93 S Ct 739, were confined to the condition: inter alia, that the abortion, if performed, be based on an appropriately safeguarded medical judgment." *(Cheaney v Indiana,* — US —; 93 S Ct 1516; 36 L Ed 2d 189 [1973]).

In any event, the decision we render today is based upon a construction of Michigan's statute guided by constitutional principles well recognized and applied in our state. We hold that, except as to those cases defined and exempted under *Roe v Wade* and *Doe v Bolton, supra,* criminal responsibility attaches. Defendant's conviction is affirmed.

T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, WILLIAMS, and LEVIN, JJ., concurred with T. M. KAVANAGH, C. J.

M. S. COLEMAN, J., concurred in the result.