MAHAFFEY v ATTORNEY GENERAL

Docket No. 177765. Submitted May 9, 1996, at Detroit. Decided March 14, 1997, at 9:35 A.M. Leave to appeal sought.

Maryann Mahaffey and others brought an action in the Wayne Circuit Court against the Attorney General of the State of Michigan and others, alleging that the "informed consent law" regarding abortions, 1993 PA 133, violates the Michigan Constitution. The court, John A. Murphy, J., granted summary disposition for the plaintiffs. The court found the informed consent law unconstitutional on two bases. First, the law violated the Headlee Amendment, Const 1963, art 9, § 29, because no specific funds were apportioned to cover the costs of complying with the informed consent law. Second, the court found that the Michigan Constitution guarantees a right to abortion, which is separate and distinct from the federal guarantee, that the right to abortion is a fundamental right under the Michigan Constitution, that the proper test for evaluating legislation related to abortion under state law is strict scrutiny, and that, under the strict scrutiny test, every provision of the informed consent law violates the Michigan Constitution. The Attorney General appealed.

The Court of Appeals held:

1. The Michigan Constitution does not guarantee a right to abortion that is separate and distinct from the federal constitutional right to abortion. There is no right to abortion under the Michigan Constitution. The right of privacy under the Michigan Constitution does not include the right to abortion. The informed consent law does not violate the Michigan Constitution's right of privacy. The trial court erred in granting the plaintiffs' motion for summary disposition and denying the Attorney General's motion for summary disposition with regard to these issues.

2. A question of fact exists regarding whether the informed consent law violates the Headlee Amendment. The trial court erred in granting the plaintiffs' motion for summary disposition in this regard. The matter must be remanded for a determination whether a state appropriation was made to cover the costs of implementing the informed consent law. Const 1963, art 9, § 29 requires only that a state appropriation be made to pay the local governmental unit for any increased costs and, therefore, does not support the trial

court's holding that when the Legislature enacts a law that imposes new activities or services on a local governmental agency, the Legislature must appropriate funds to cover the costs of the law's requirements. The trial court erred in holding that the executive branch cannot fund out of an existing appropriation a new activity or service required of units of local government by the Legislature.

3. The trial court improperly determined that the Department of Public Health has committed itself to using funds established for existing programs to pay for costs that have not been appropriated under the informed consent law. Because a factual dispute remains with regard to this issue, summary disposition of this issue was improper.

4. The trial court erred in ruling that the informed consent law is unconstitutional in its entirety because of the Headlee Amendment violation without first considering whether the unconstitutional provision could be severed from the remainder of the act. On remand, if the court determines that the requirements of the act with regard to local public health departments violate the Headlee Amendment and are therefore unconstitutional, the court must determine whether the portion of the act setting forth the new requirements can reasonably be severed from the remainder of the act.

5. The informed consent law does not violate due process protections. The provisions of the act are reasonably related to the achievement of the legitimate legislative objectives of ensuring that a woman's decision to obtain an abortion is informed, voluntary, and reflective and of protecting, within the limits of federal constitutional law, the life of the fetus.

Reversed in part and remanded.

1. CONSTITUTIONAL LAW — ABORTION AND BIRTH CONTROL — RIGHT TO PRIVACY.

The Michigan Constitution does not guarantee a right to abortion that is separate and distinct from the federal right; the right to privacy under the Michigan Constitution does not include the right to abortion.

2. CONSTITUTIONAL LAW — ABORTION AND BIRTH CONTROL — INFORMED CONSENT ACT — RIGHT TO PRIVACY.

The informed consent act concerning abortion does not violate the Michigan Constitution's right to privacy (1993 PA 133).

3. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — STATE FUNDING OF NEW OR INCREASED ACTIVITIES OR SERVICES.

The section of the Headlee Amendment enacted to ensure that the state would fund any new activity or service, or any increase in the

level of an existing activity or service, that is required by the state requires only that a state appropriation be made to pay the local governmental unit for any increased costs; the section does not require that when the Legislature enacts a law that imposes new activities or services on a local governmental agency, the Legislature must appropriate funds to cover the cost of the law's requirements; the executive branch may fund out of an existing appropriation a new activity or service required of units of local government by the Legislature (Const 1963, art 9, § 29).

4. CONSTITUTIONAL LAW — ABORTION AND BIRTH CONTROL — INFORMED CONSENT ACT — PARTIAL INVALIDATION.

The Legislature intended that any provisions of the informed consent law concerning abortions that are determined to be unconstitutional should be severed from the remaining provisions; if a valid object of an act can be achieved without the use of an invalid part of the act, the valid part of the act will be upheld (MCL 333.17015[14]; MSA 14.15[17015][14]).

5. CONSTITUTIONAL LAW — ABORTION AND BIRTH CONTROL — INFORMED CONSENT ACT — DUE PROCESS.

The provisions of the informed consent law regarding abortions do not violate due process protections; the provisions are reasonably related to the achievement of the legitimate legislative objectives of ensuring that a woman's decision to obtain an abortion is informed, voluntary, and reflective and of protecting, within the limits of federal constitutional law, the life of the fetus (1993 PA 133).

American Civil Liberties Union Fund of Michigan (by *Paul J. Denenfeld* and *Corinne B. Yates*), and *Elizabeth Gleicher*, for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *R. John Wernet, Jr.*, for the Attorney General.

Amici Curiae:

*Joseph P. Zanglin* and Americans United for Life (by *Paul B. Linton* and *Clarke D. Forsythe*), for Michigan State Senators R. Robert Geake, Mat Dunaskiss, Doug Carl, David Honigman, Philip Hoffman, John Schwarz, Paul Wartner, William VanRegenmorter, Gil-

bert Dinello, Dick Posthumus, Glenn Steil, Phil Arthurhultz, and George McManus, and Michigan State Representatives Timothy Walberg, Michael Griffin, Clyde LeTarte, Dan Gustafson, Walter DeLange, Harold Voorhees, Clark Harder, Alan Cropsey, Paul Hillegonds, Jessie Dalman, Paul Baade, Jim McBryde, and Michelle McManus.

The Center for Reproductive Law & Policy (by *Eve Gartner*, *Priscilla Smith*, and *Kathryn Kolbert*), and *Shelly Spivack*, and *Linda Pylypiw*, and Planned Parenthood (by *Lore Rogers*), for Northland Family Planning Clinic, Inc., Northland Family Planning Clinic, Inc.-West, Northland Family Planning Clinic, Inc.-East, Summit Medical Center, Feminine Health Care Clinic, P.C., Womancare of Downriver, P.C., Womancare of Livonia, P.C., Womancare of Macomb, P.C., Womancare of Southfield, P.C., Womancare of Lansing, P.C., Womancare of Northland, P.C., Michiana Abortion Clinic, P.C., Heritage Clinic for Women, Planned Parenthood of Mid-Michigan, Planned Parenthood League-Sanger Center, Planned Parenthood of South Central Michigan, Louis Twigg, M.D., Victor Shay, M.D., Chin-Shuh Chen, M.D., Michael A. Roth, M.D., Planned Parenthood Association of Southwestern Michigan, Planned Parenthood of East Central Michigan, Planned Parenthood Centers of West Michigan, Marquette-Alger Planned Parenthood, Inc., Northern Michigan Planned Parenthood Association, Inc., National Organization for Women, Michigan Chapter, and Michigan Abortion Rights Action League.

Before: REILLY, P.J., and CAVANAGH and R. C. ANDER-
SON*, JJ.

PER CURIAM. In this case we are required to decide
whether 1993 PA 133,[1] commonly known as the
"informed consent law," violates the Michigan Consti-
tution. The trial court held that the Michigan Consti-
tution guarantees a right to abortion that is separate
and distinct from the federal constitutional right to
abortion. The trial court then held that the informed
consent law violates the state right to abortion. The
trial court further held that the informed consent law
is unconstitutional because it violates the Headlee
Amendment, Const 1963, art 9, § 29. We reverse in
part and remand for proceedings consistent with this
opinion.

In 1993, the Legislature amended the Public Health
Code to establish minimum standards for physicians
who perform abortions. The new act requires that a
physician or qualified assistant must provide a
woman seeking an abortion information about the
fetus, including both a description and a depiction of
a fetus at the approximate gestational age of the
woman's fetus, and information about the abortion
procedure itself and potential complications from the
procedure. The physician must instruct the woman
that she has the option to review the information or
not. The act also mandates a twenty-four-hour waiting
period between the receipt of the information and
performance of the abortion. MCL 333.17015(3); MSA
14.15(17015)(3). However, both the dissemination of

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] The relevant provisions of the act are codified at MCL 333.17014,
333.17015, 333.17515; MSA 14.15(17014), 14.15(17015), 14.15(17515).

the information and the waiting period are waived in cases where a physician determines that a medical emergency exists. MCL 333.17015(7); MSA 14.15(17015)(7). In addition, the act requires that local health departments provide certain information to women seeking abortions, including descriptions of medical procedures used to perform abortions and descriptions and depictions of a fetus at the approximate gestational age of the woman's fetus. MCL 333.17015(15); MSA 14.15(17015)(15).

The Legislature set forth its reasons for adopting the new requirements as follows:

> The legislature recognizes that under federal constitutional law, a state is permitted to enact persuasive measures which favor childbirth over abortion, even if those measures do not further a health interest. Sections 17015 and 17515 are nevertheless designed to provide objective, truthful information, and are not intended to be persuasive. The legislature finds that enactment of sections 17015 and 17515 is essential for all of the following reasons:
>
> (a) The knowledgeable exercise of a woman's decision to have an abortion depends on the extent to which the woman receives sufficient information to make an informed choice regarding abortion.
>
> (b) The decision to obtain an abortion is an important and often stressful one, and it is in the state's interest that the decision be made with full knowledge of its nature and consequences.
>
> (c) Enactment of sections 17015 and 17515 is necessary to ensure that, before an abortion, a woman is provided information regarding her available alternatives, and to ensure that a woman gives her voluntary and informed consent to an abortion.
>
> (d) The receipt of accurate information about abortion and its alternatives is essential to the physical and psychological well-being of a woman considering an abortion.

(e) Because many abortions in this state are performed in clinics devoted solely to providing abortions, women who seek abortions at these facilities normally do not have a prior patient-physician relationship with the physician performing the abortion, nor do these women continue a patient-physician relationship with the physician after the abortion. In many instances, the woman's only actual contact with the physician performing the abortion occurs simultaneously with the abortion procedure, with little opportunity to receive counsel concerning her decision. Consequently, certain safeguards are necessary to protect a woman's opportunity to select the option best suited to her particular situation.

(f) This state has an interest in protecting women and, subject to United States constitutional limitations and supreme court decisions, this state has an interest in protecting the fetus.

(g) Providing a woman with factual, medical, and biological information about the fetus she is carrying is essential to safeguard the state's interests described in subdivision (f). The dissemination of the information set forth in sections 17015 and 17515 is necessary due to the irreversible nature of the act of abortion and the often stressful circumstances under which the abortion decision is made.

(h) The safeguards that will best protect a woman seeking advice concerning abortion include the following:

*(i)* Private, individual counseling, including dissemination of certain information, as the woman's individual circumstances dictate, that affect her decision of whether to choose an abortion.

*(ii)* A 24-hour waiting period between a woman's receipt of that information provided to assist her in making an informed decision, and the actual performance of an abortion, if she elects to undergo an abortion. A 24-hour waiting period affords a woman, in light of the information provided by the physician or a qualified person assisting the physician, an opportunity to reflect on her decision and to seek counsel of family and friends in making her decision.

(i) The safeguards identified in subdivision (h) advance a woman's interest in the exercise of her discretion to choose

or not to choose an abortion, and are justified by the objectives and interests of this state to protect the health of a pregnant woman and, subject to United States constitutional limitations and supreme court decisions, to protect the fetus. [MCL 333.17014; MSA 14.15(17014).]

The act was signed by the Governor on July 28, 1993, and scheduled to take effect on April 1, 1994.

Plaintiffs in this action are Maryann Mahaffey, president of the Detroit City Council, and several individual physicians who perform abortions. On March 10, 1994, plaintiffs filed a complaint challenging the constitutionality of the act. Plaintiffs claimed that the act violates a woman's right to privacy and due process, violates a physician's right to free speech, and is unconstitutionally vague with regard to what constitutes a "medical emergency." Plaintiffs also claimed that the act was unconstitutional because, in violation of the Headlee Amendment, the Legislature did not enact a specific appropriation for funding the act. Plaintiffs' complaint is predicated entirely on state-law claims.[2]

Plaintiffs filed a motion for summary disposition pursuant to MCR 2.116(C)(10), and the Attorney General filed a motion for summary disposition pursuant to MCR 2.116(C)(8). On June 10, 1994, the trial court heard oral argument regarding the parties' respective motions. Plaintiffs argued that the act was unconstitutional and that no genuine issue of material fact remained for trial. The Attorney General, on the other

---

[2] Around the same time, a separate complaint was filed in the federal district court by a group of abortion clinics, physicians, and individual patients, challenging the act solely under federal law. On August 30, 1994, the federal district court issued an order staying its proceedings pending the final disposition of the state-law claims.

hand, argued that plaintiffs' complaint failed to state a claim upon which relief could be granted because it was based upon the erroneous assumption that Michigan recognized a right to abortion separate and distinct from the federal right. At the close of oral argument, the trial court took the parties' motions under advisement.

On July 15, 1994, the trial court issued a written opinion granting plaintiffs' motion for summary disposition. In its opinion, the trial court found the informed consent law unconstitutional on two bases. First, the trial court stated that because no specific funds were apportioned to cover the costs of complying with the act, the act violated the Headlee Amendment and was therefore unconstitutional. In addition, the trial court found that the Michigan Constitution guarantees a right to abortion, which is separate and distinct from the federal guarantee. The trial court then concluded that the right to abortion is a fundamental right under the Michigan Constitution. The trial court further found that the proper test for evaluating legislation related to abortion under state law is strict scrutiny, rather than the "undue burden" test utilized in federal law.[3] The trial court held that, under the strict scrutiny standard, every provision of the informed consent law violates the Michigan Constitution. The Attorney General appeals as of right.

I

We first review the trial court's finding that there is a right to abortion under the Michigan Constitution. As an initial matter, we note that the existence of a

---

[3] See *Planned Parenthood of Southeastern Pennsylvania v Casey*, 505 US 833; 112 S Ct 2791; 120 L Ed 2d 674 (1992).

federal constitutional right to abortion[4] is not neces-
sarily relevant to this determination. Our Supreme
Court has stated:

> [A]ppropriate analysis of our constitution does not begin
> from the conclusive premise of a federal floor. . . . As a mat-
> ter of simple logic, because the texts were written at differ-
> ent times by different people, the protections afforded may
> be greater, lesser, or the same. [*Sitz v Dep't of State Police*,
> 443 Mich 744, 761-762; 506 NW2d 209 (1993).]

The Supreme Court has stated, "This Court has
long recognized privacy to be a highly valued right."
*Advisory Opinion on Constitutionality of 1975 PA
227*, 396 Mich 465, 504; 242 NW2d 3 (1976), citing *De
May v Roberts*, 46 Mich 160; 9 NW 146 (1881). The
parties agree that the Michigan Constitution provides
a generalized right of privacy. What is in dispute,
therefore, is whether the constitutional right to pri-
vacy encompasses the right to abortion. We conclude
that neither application of traditional rules of consti-
tutional interpretation nor examination of Supreme
Court precedent supports the conclusion that there is
a right to abortion under the Michigan Constitution.

Constitutional issues are questions of law and are
reviewed de novo on appeal. *Yaldo v North Pointe Ins
Co*, 217 Mich App 617, 623; 552 NW2d 657 (1996). In
interpreting a constitutional provision, the primary
duty of the judiciary is to ascertain the purpose and
intent of the provision at issue. *White v Ann Arbor*,
406 Mich 554, 562; 281 NW2d 283 (1979). The intent to
be determined is that of the people who adopted the
constitutional provision at issue. *Charles Reinhart Co*

---

[4] See *Roe v Wade*, 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973).

*v Winiemko,* 444 Mich 579, 605-606; 513 NW2d 773
(1994) (RILEY, J.); *Michigan Farm Bureau v Secretary
of State,* 379 Mich 387, 390-391; 151 NW2d 797 (1967).
Intent should be determined by reference to the state
of the law or custom previously existing, and by con-
temporaneous construction, rather than by reference
to the changed views of the present day. *Sitz, supra*
at 764; *Pfeiffer v Detroit Bd of Ed,* 118 Mich 560, 564;
77 NW 250 (1898). Thus, a court should place itself in
the position of the framers and ascertain what was
meant at the time the provision was adopted. *Id.*

The factors that should be considered in determin-
ing whether our state constitution provides separate
protection for the individual rights of our state's citi-
zens are as follows:

> (1) [T]he textual language of the state constitution, (2)
> significant textual differences in parallel provisions of the
> federal and state constitutions, (3) state constitutional and
> common-law history, (4) state law preexisting the constitu-
> tional provision, (5) structural differences between the fed-
> eral and state constitutions, and (6) matters of particular
> state interest or local concern. [*People v Catania,* 427 Mich
> 447, 466, n 12; 398 NW2d 343 (1986).]

When the 1963 constitution was adopted, abortion
was a criminal offense. See MCL 750.14; MSA 28.204.
The drafters of a constitutional provision are pre-
sumed to have known the existing laws and to have
drafted the provision accordingly. *Bingo Coalition for
Charity—Not Politics v Bd of State Canvassers,* 215
Mich App 405, 412; 546 NW2d 637 (1996). Thus, we
must presume that the drafters of the 1963 constitu-
tion were aware of the statutory prohibition against
abortion. The fact that the 1963 constitution itself and
the debates of the Constitutional Convention preced-

ing the adoption of the constitution are silent regarding the question of abortion indicates that there was no intention of altering the existing law. We believe that the addition of a fundamental right to abortion to the constitution "would have been such a marked change in the law as to elicit major debate among the delegates to the Constitutional Convention as well as the public at large." *People v Thompson*, 424 Mich 118, 129; 379 NW2d 49 (1985). Furthermore, less than ten years after the adoption of the constitution, essentially the same electorate that approved the constitution rejected a proposal brought by proponents of abortion reform to amend the Michigan abortion statute. See *People v Bricker*, 389 Mich 524, 529; 208 NW2d 172 (1973). Under these facts, we cannot conclude that the intent of the people that adopted the 1963 constitution was to establish a constitutional right to abortion. See *Sitz, supra*; *Pfeiffer, supra.*

An examination of Michigan Supreme Court precedent also leads to the conclusion that there is no right to abortion under the Michigan Constitution. After the United States Supreme Court decided *Roe v Wade*, 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), and *Doe v Bolton*, 410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973), our Supreme Court was called upon to determine the effect of those cases on Michigan law. In *Bricker, supra*, the defendant, who was not a physician, had been convicted of conspiracy to commit an abortion.[5] The Court acknowledged that it was bound by *Roe* under the Supremacy Clause.[6] However, the

---

[5] MCL 750.157a; MSA 28.354(1), MCL 750.14; MSA 28.204.

[6] US Const, art VI, § 2.

*Bricker* Court made the following statement regarding Michigan's public policy and abortion:

> The public policy of this state is a mandate upon us. Our duty to enforce that mandate is as clear as is our duty to comply with decisions of the United States Supreme Court construing the Federal Constitution.
>
> The public policy of this state is to be found in the declarations and deeds of its people. These find concrete expression in the constitution adopted by the people, the laws enacted by the Legislature, the acts of the Governor, the Attorney General, others exercising executive power, the decisions of our courts, and the vote of the people. . . .
>
> It is the public policy of the state to proscribe abortion. [*Id.* at 529.]

Having declared that the public policy of Michigan does not favor abortion, the Court sought to save what it could of the Michigan statutes prohibiting abortion. *Id.* at 527-529. Thus, the Court held that criminal responsibility continues to attach to all abortions except those defined and exempted under *Roe* and *Doe*. Accordingly, because *Roe* applies only to abortions performed by doctors under prescribed circumstances, the *Bricker* Court held that criminal responsibility continued to attach to abortions performed by nonphysicians. The Court therefore affirmed the defendant's conviction. *Id.* at 527, 531.

In *Bricker*, the Supreme Court stated that the public policy of the state proscribing abortion must "be subordinated to Federal Constitutional requirements." *Id.* at 529. The Supreme Court further declared in a companion case to *Bricker*, "Our duty is to read the Michigan act to be consistent with the Federal Constitution, if such interpretation can be made without doing violence to the language used by the Legisla-

ture." *Larkin v Wayne Prosecutor*, 389 Mich 533, 541; 208 NW2d 176 (1973). The *Larkin* Court also stated, at 542, "By reason of *Roe v Wade*, we are compelled to rule that *as a matter of Federal constitutional law*, a fetus is conclusively presumed not to be viable within the first trimester of pregnancy." (Emphasis added.) Thus, *Bricker* and *Larkin* suggest that in Michigan a woman's right to abortion is derived solely from the federal constitution.

Plaintiffs rely on *People v Nixon*, 42 Mich App 332; 201 NW2d 635 (1972), remanded 389 Mich 809 (1973), (On Remand), 50 Mich App 38; 212 NW2d 797 (1973). In *Nixon*, this Court affirmed the conviction of a physician who performed an abortion without following accepted medical procedures. 42 Mich App 341-342, 344. However, the majority went on to state that the purpose of the state's criminal abortion statute, MCL 750.14; MSA 28.204, was not to protect the rights of the unquickened fetus,[7] but, rather, to protect the pregnant woman. 42 Mich App 337. The *Nixon* majority explained that because advances in medicine had dramatically reduced the danger of abortion, the blanket denial of a woman's right to obtain an abortion was no longer justified. For this reason, the majority concluded that the purpose of the statute making abortion a felony "is no longer existent as it applies to licensed physicians in a proper medical setting." *Id.* at 339.

Plaintiffs argue that because the Supreme Court did not vacate *Nixon*, the Court thereby indicated approval of the decision. We disagree. First, the

---

[7] Quickening is the point at which the mother can feel the movements of the fetus. Quickening usually occurs in the fourth or fifth month of pregnancy. *Nixon*, 42 Mich App 335, n 3.

Supreme Court remanded *Nixon* to this Court "for disposition not inconsistent with" *Larkin* and *Bricker.* 389 Mich 809-810. Second, because the *Nixon* majority affirmed the defendant's conviction under Michigan's abortion statute, we conclude that its discussion of the constitutionality of the statute under circumstances other than those presented in that case was mere dicta. Therefore, we attach no especial significance to the Supreme Court's failure to vacate *Nixon,* particularly in light of its clearly expressed opinion regarding the constitutionality of Michigan's abortion statute in *Bricker.* Finally, because *Bricker* and *Larkin* are decisions of our Supreme Court, we are bound by them until they are overruled or modified by that Court. See *Boyd v W G Wade Shows,* 443 Mich 515, 523; 505 NW2d 544 (1993).

We wish to emphasize that our decision today has no effect on the right of Michigan women to obtain an abortion under the United States Constitution. Women in Michigan are still entitled to secure an abortion as set forth by the United States Supreme Court in *Roe v Wade* and its progeny. We merely hold that the Michigan Constitution does not guarantee a right to abortion that is separate and distinct from the federal right.

II

The Attorney General also argues that the trial court erred in finding that the informed consent law is unconstitutional because it violates the Headlee Amendment. We find that a question of fact exists regarding whether the act violates the Headlee Amendment. Therefore, the trial court erred in grant-

ing plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10).

On appeal, an order granting or denying summary disposition is reviewed de novo. A motion for summary disposition may be granted pursuant to MCR 2.116(C)(10) when, except with regard to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Giving the benefit of reasonable doubt to the nonmovant, the trial court must determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Plieth v St Raymond Church*, 210 Mich App 568, 571; 534 NW2d 164 (1995).

The Headlee Amendment provides, in pertinent part:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18. [Const 1963, art 9, § 29.]

Any taxpayer of the state has standing to bring suit to enforce the provisions of the Headlee Amendment. *Id.*, § 32.

The Attorney General concedes that the informed consent law requires new activities or services to be performed by local public health departments. However, the Attorney General argues that the trial court

erred in holding that the Headlee Amendment requires the Legislature to enact a new appropriation specifically identifying and providing funds for new services required of local health departments by the informed consent law. Rather, the Attorney General contends that the Headlee Amendment requires only that there be an appropriation out of which the necessary costs of the mandated local services are to be paid. The Attorney General presented a letter dated April 24, 1994, from Vernice Davis Anthony, director of the Department of Public Health, to Patricia Woodworth, director of the Department of Management and Budget, in which Anthony stated that the Department of Public Health would reimburse local health departments for the costs of implementing the new legislation, and that the funds would be taken from the existing budget.

The Headlee Amendment was intended to limit legislative expansion of requirements placed on local government spending, to limit excessive government spending, and to lower taxes at both the state and the local level. *Airlines Parking, Inc v Wayne Co*, 452 Mich 527, 532; 550 NW2d 490 (1996). The Headlee Amendment was enacted to ensure that the state would fund any new activity or service, or any increase in the level of an existing activity or service, that was required by the state. *Livingston Co v Dep't of Management & Budget*, 430 Mich 635, 647; 425 NW2d 65 (1988). Thus, it is clear that, pursuant to the Headlee Amendment, the state must provide the funds to cover the costs of implementing § 17015 of the informed consent law.

The trial court held that when the Legislature enacts a law that imposes new activities or services

on a local governmental agency, the Legislature must appropriate funds to cover the cost of the law's requirements. We believe that the language of art 9, § 29 does not support the trial court's holding. The provision requires only that a *state* appropriation be made to pay the local governmental unit for any increased costs. In holding that the executive branch cannot fund out of an existing appropriation a new activity or service required of units of local government by the Legislature, the trial court in effect bars such cooperative ventures by the legislative and executive branches. We find this result to be inconsistent with the voters' call for responsible and cost-efficient government.

The Department of Public Health is unquestionably a state entity. We conclude that Anthony's letter created a genuine issue of material fact regarding whether the costs of implementing the informed consent law will be covered by a state appropriation. Accordingly, the trial court erred in granting plaintiffs' motion for summary disposition in this regard, and we remand for a determination whether a state appropriation was made to cover the costs of implementing the informed consent law.

We also find that the trial court improperly determined that "the department of public health has committed itself to using funds established for existing programs to pay for what hasn't been appropriated for [sic] under this program." At the hearing regarding the parties' motions, the Attorney General denied that funds already allocated to other programs would be used to fund the informed consent law. While the Attorney General did not present any evidence to support this contention, plaintiffs did not present any evi-

dence that funds committed to existing programs would be utilized. In making its finding, the trial court in effect resolved the factual dispute of whether the state was improperly diverting funds earmarked for existing programs in order to pay for the expenses of the informed consent act. When reviewing a motion for summary disposition, the trial court must carefully avoid making findings of fact under the guise of determining that no issue of material fact exists. *Hickman v General Motors Corp*, 177 Mich App 246, 250; 441 NW2d 430 (1989).

Finally, we note that the trial court erred in ruling that the informed consent act is unconstitutional in its entirety because of the Headlee Amendment violation without first considering whether the unconstitutional provision could be severed from the remainder of the act. MCL 8.5; MSA 2.216 states in pertinent part:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

If the valid object of the act can be achieved without the invalid part, the act will be upheld. *Michigan State AFL-CIO v Michigan Employment Relations Comm*, 212 Mich App 472, 501; 538 NW2d 433 (1995).

Furthermore, with regard to the informed consent law, the Legislature specifically provided:

> If any portion of this act or the application of this act to any person or circumstances is found invalid by a court,

that invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided those remaining portions are not determined by the court to be inoperable. [MCL 333.17015(14); MSA 14.15(17015)(14).]

Thus, it is clear that the Legislature intended that any unconstitutional provisions of the act should be severed from the remaining provisions. Therefore, if the trial court determines on remand that the requirements of the act with regard to local public health departments violate the Headlee Amendment and therefore are unconstitutional, the court should then determine whether the portion of the act setting forth the new requirements can reasonably be severed from the remainder of the act. See *Michigan State AFL-CIO, supra.*

III

We next address the constitutionality of the provisions of the informed consent law. We note that under established rules of statutory construction, statutes are presumed constitutional, and courts have a duty to construe a statute as constitutional unless unconstitutionality is clearly apparent. *In re Forfeiture of $109,901*, 210 Mich App 191, 197; 533 NW2d 328 (1995). Every reasonable presumption must be made in favor of constitutionality. *Vargo v Sauer*, 215 Mich App 389, 394; 547 NW2d 40 (1996).

To determine whether a statute violates due process, the pertinent issue is whether the statute bears a reasonable relation to a permissible legislative objective. *Sills v Oakland General Hosp*, 220 Mich App 303, 311; 559 NW2d 348 (1996). The stated purposes behind the informed consent law are to ensure

that a woman's decision to obtain an abortion is informed, voluntary, and reflective, and to protect, within the limits of federal constitutional law, the life of the fetus. MCL 333.17014; MSA 14.15(17014). These are legitimate legislative objectives. See *Planned Parenthood of Southeastern Pennsylvania v Casey*, 505 US 833, 871-874; 112 S Ct 2791; 120 L Ed 2d 674 (1992); *Doe v Dep't of Social Services*, 439 Mich 650, 680; 487 NW2d 166 (1992). We find that the provisions of the informed consent law are reasonably related to the achievement of these objectives. We note that similar requirements have been upheld as valid under federal law. See, e.g., *Casey, supra* at 878-887; *Fargo Women's Health Organization v Schafer*, 18 F3d 526 (CA 8, 1994); *Barnes v Moore*, 970 F2d 12 (CA 5, 1992), cert den 506 US 1013; 113 S Ct 656; 121 L Ed 2d 582 (1992); *Utah Women's Clinic, Inc v Leavitt*, 844 F Supp 1482 (D Utah, 1994), rev'd in part on other grounds 75 F3d 564 (CA 10, 1995).

IV

In conclusion, we find that the right of privacy under the Michigan Constitution does not include the right to abortion. We also find that the informed consent act does not violate the Michigan Constitution's right of privacy. Accordingly, the trial court erred in granting plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10) and denying the Attorney General's motion for summary disposition pursuant to MCR 2.116(C)(8) with regard to these issues. We further conclude that because there is a genuine issue of material fact regarding whether the informed consent law violates the Headlee Amendment, the

trial court erred in granting plaintiffs' motion for summary disposition with regard to this issue.

Reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, because a question of public policy is involved.