**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 27, 2007

THE GREATER BIBLE WAY TEMPLE OF
JACKSON,

     Plaintiff-Appellee,

v                                   Nos. 130194, 130196

CITY OF JACKSON, JACKSON PLANNING
COMMISSION, AND JACKSON CITY COUNCIL,

     Defendants-Appellants.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

     We granted leave to appeal to consider whether the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 USC 2000cc *et seq*., entitles plaintiff to the rezoning of its property from single-family residential to multiple-family residential to allow plaintiff to build an apartment complex. The lower courts held that RLUIPA does entitle plaintiff to the rezoning of its property. We conclude that a refusal to rezone does not constitute an "individualized assessment," and, thus, that RLUIPA is inapplicable. Further, even if RLUIPA is

applicable, the building of an apartment complex does not constitute a "religious exercise," and even if it does constitute a "religious exercise," the city of Jackson's refusal to rezone plaintiff's property did not substantially burden plaintiff's religious exercise, and even if it did substantially burden plaintiff's religious exercise, the imposition of that burden is in furtherance of a compelling governmental interest and constitutes the least restrictive means of furthering that interest. Therefore, even assuming that RLUIPA is applicable, it has not been violated. For these reasons, we reverse the judgment of the Court of Appeals and remand this case to the trial court for the entry of a judgment in favor of defendants.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff wants to build an apartment complex across the street from its church on property that it owns in the city of Jackson. The property consists of eight lots totaling 1.13 acres. The property is zoned single-family residential (R-1). One of the lots contains a single-family residence, and the remaining lots are vacant. There are single-family residences on each side of the property. Plaintiff petitioned the city to change the zoning of the property to multiple-family residential (R-3) so that it could construct an apartment complex.

The Region 2 Planning Commission recommended denying plaintiff's rezoning petition. After a public hearing, the city planning commission also voted to recommend that the city council deny plaintiff's rezoning petition. Pursuant to

2

these recommendations, and following another public hearing, the city council voted to deny plaintiff's rezoning petition.

Plaintiff then filed a complaint against defendants, containing two counts: count one directly challenged the city's zoning decision and count two alleged a violation of RLUIPA. The trial court granted defendants' motion for summary disposition with regard to count one, which decision was not appealed. With regard to count two, the trial court denied defendants' motion for summary disposition and granted plaintiff's motion for summary disposition in part. Specifically, the trial court ruled that RLUIPA did apply because the city's zoning decision constituted an "individualized assessment," and the refusal to rezone plaintiff's property imposed a "substantial burden" on the exercise of religion. The trial court then ordered a trial on the issue whether the city had a compelling interest for its refusal to rezone. After a bench trial, the trial court ruled that defendants had failed to demonstrate such an interest. Therefore, it determined that defendants had violated RLUIPA and that plaintiff was entitled to the requested rezoning of its property. The trial court enjoined defendant from interfering in any manner with plaintiff's efforts to construct an apartment complex on its property. After the final order was issued, plaintiff filed a motion for attorney fees and costs and the trial court awarded plaintiff over $30,000 in attorney fees and costs.

The Court of Appeals affirmed the trial court in all respects. 268 Mich App 673; 708 NW2d 756 (2005). The Court of Appeals also held that the application of RLUIPA to compel the requested rezoning did not render the statute unconstitutional. We granted defendants' application for leave to appeal. 474 Mich 1133 (2006).

## II. STANDARD OF REVIEW

A trial court's ruling on a summary disposition motion is a question of law that this Court reviews de novo. *Haynes v Neshewat*, 477 Mich 29, 34; 729 NW2d 488 (2007). Questions of statutory interpretation are also questions of law that that this Court reviews de novo. *Id.*

## III. ORIGINS OF RLUIPA

The First Amendment of the United States Constitution provides, in pertinent part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." US Const, Am I. The second clause of this amendment is commonly known as the Free Exercise Clause. The protections provided by the First Amendment, including the Free Exercise Clause, have been "incorporated" and extended to the states and to their political subdivisions by the Fourteenth Amendment. *Cantwell v Connecticut*, 310 US 296, 303; 60 S Ct 900; 84 L Ed 1213 (1940); *Santa Fe Independent School Dist v Doe*, 530 US 290, 301; 120 S Ct 2266; 147 L Ed 2d 295 (2000).

4

In *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963), the plaintiff, a member of the Seventh-Day Adventist Church was discharged by her employer because she would not work on Saturday, the Sabbath Day of her faith. She was unable to obtain other employment because she would not work on Saturdays. The South Carolina Unemployment Compensation Act, SC Code, Tit 68, § 68-1 *et seq*., provided that a claimant was ineligible for benefits if the claimant had failed "without good cause" to accept available suitable work. The Employment Security Commission determined that the plaintiff's religious belief against working on Saturdays did not constitute "good cause." The United States Supreme Court held that denying the plaintiff unemployment compensation benefits solely because of her refusal to accept employment in which she would have to work on Saturdays contrary to her religious belief imposed a substantial burden on her exercise of her religion that was not justified by a compelling state interest, and, thus, violated the Free Exercise Clause.

In *Employment Div, Dep't of Human Resources of Oregon v Smith*, 494 US 872; 110 S Ct 1595; 108 L Ed 2d 876 (1990), the United States Supreme Court held that Oregon's prohibition of the use of peyote in religious ceremonies, and the denial of unemployment benefits to persons discharged for such use, does not violate the Free Exercise Clause of the First Amendment. The Court explained that generally applicable, religion-neutral laws that have the effect of burdening a

particular religious practice need not be justified, under the Free Exercise Clause, by a compelling governmental interest.[1]

In response to *Smith,* Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA),[2] prohibiting the government from substantially burdening a person's exercise of religion, even by means of a generally applicable, religion-neutral law, unless the government could demonstrate that the burden imposed furthers a compelling governmental interest and that it constitutes the least restrictive means of furthering such interest.

---

[1] *Smith, supra* at 884, held that *Sherbert* was distinguishable because *Sherbert* involved an "individualized governmental assessment"; that is, the "good cause" standard at issue in *Sherbert* allowed the government to consider the plaintiff's "particular circumstances." See pp 15-17 *infra.* That is, *Smith* held that while the "compelling governmental interest" test may be applicable to laws allowing for an "individualized governmental assessment," it is not applicable to generally applicable laws that do not allow for an "individualized governmental assessment."

[2] RFRA provides, in pertinent part:

> (a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

> (b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest. [42 USC 2000bb-1.]

However, in *City of Boerne v Flores*, 521 US 507; 117 S Ct 2157; 138 L Ed 2d 624 (1997), the United States Supreme Court held that Congress, in enacting RFRA, had exceeded its powers under § 5 of the Fourteenth Amendment to enact legislation enforcing the Free Exercise Clause of the First Amendment because RFRA proscribes state conduct that the First Amendment itself does not proscribe.[3] The Court explained:

> Congress' power under § 5, however, extends only to "enforcing" the provisions of the Fourteenth Amendment. The Court has described this power as "remedial . . . ." The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States. Legislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the Clause. Congress does not enforce a constitutional right by changing what the right is. It has been given the power "to enforce," not the power to determine what constitutes a constitutional violation. Were it not so, what Congress would be enforcing would no longer be, in any meaningful sense, the "provisions of [the Fourteenth Amendment]."

> While the line between measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law is not easy to discern, and Congress must have wide latitude in determining where it lies, the distinction exists and must be observed. There must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. Lacking such a connection, legislation may become substantive in operation and effect. [*Id.* at 519-520.]

---

[3] Section 5, the Enforcement Clause of the Fourteenth Amendment, provides:

> The Congress shall have power to enforce, by appropriate legislation, the provisions of this article. [US Const, Am XIV, § 5.]

The Supreme Court then concluded that the substantial costs that RFRA exacted through its "compelling governmental interest" test "far exceed any pattern or practice of unconstitutional conduct under the Free Exercise Clause as interpreted in *Smith*." *Id.* at 534. Thus, "the Court invalidated RFRA as applied to the states, finding it an unconstitutional exercise of Congress' Enforcement Clause powers because Congress had not shown a pattern of religious discrimination meriting such a far-reaching remedy . . . ." Galvan, *Beyond worship: The Religious Land Use and Institutionalized Persons Act of 2000 and religious institutions' auxiliary uses*, 24 Yale L & Policy R 207, 218 (2006).[4]

In response to *City of Boerne,* Congress enacted RLUIPA. Unlike RFRA, RLUIPA does not attempt to bar all laws that substantially burden religious exercise. Instead, it focuses on land use regulations[5] and provides, in pertinent part:

___

[4] Although RFRA no longer applies to the states, it still applies to the federal government. See *Gonzales v O Centro Espirita Beneficente Uniao Do Vegetal,* 546 US 418; 126 S Ct 1211; 163 L Ed 2d 1017 (2006) (holding that, under RFRA, the Controlled Substances Act, 21 USC 801 *et seq.*, cannot prohibit a religious sect from receiving communion by drinking *hoasca,* a tea that contains a hallucinogen).

[5] RLUIPA also focuses on regulations pertaining to institutionalized persons, but that portion of RLUIPA is not applicable here.

(a) Substantial burdens.

(1) General rule. No government[6] shall impose or implement a land use regulation[7] in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

---

[6] "Government" is defined as:

(i) a State, county, municipality, or other governmental entity created under the authority of a State;

(ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and

(iii) any other person acting under color of State law; and

(B) for the purposes of sections 4(b) and 5 [42 USC 2000cc-2(b) and 2000cc-3], includes the United States, a branch, department, agency, instrumentality, or official of the United States, and any other person acting under color of Federal law. [42 USC 2000cc-5(4).]

[7] "Land use regulation" is defined as a

zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest. [42 USC 2000cc-5(5).]

That the city's denial of plaintiff's petition to rezone its property here constitutes a "land use regulation" is uncontested.

(2) Scope of application. This subsection applies in any case in which--

\* \* \*

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved. [42 USC 2000cc(a).][8]

"Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 USC 2000cc-5(7)(A). RLUIPA specifically provides that "[t]he use, building, or conversion of

_____

[8] RLUIPA further provides:

(b) Discrimination and exclusion.

(1) Equal terms. No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination. No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

(3) Exclusions and limits. No government shall impose or implement a land use regulation that--

(A) totally excludes religious assemblies from a jurisdiction; or

(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction. [42 USC 2000cc(b).]

Plaintiff does not argue that 42 USC 2000cc(b) was violated.

real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 USC 2000cc-5(7)(B). A plaintiff asserting a RLUIPA violation has the burden of presenting prima facie evidence to support the assertion. 42 USC 2000cc-2(b).[9] That is, the plaintiff has the burden to prove that RLUIPA is applicable and that the government has implemented a land use regulation that imposes a substantial burden on the exercise of religion. *Id.* Once the plaintiff has proven this, the burden shifts to the government to prove that the imposition of such burden is in furtherance of a compelling governmental interest and constitutes the least restrictive means of furthering that interest. *Id.* As the United States Supreme Court has explained, "RLUIPA is [a] congressional effort[] to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedents." *Cutter v Wilkinson,* 544 US 709, 714; 125 S Ct 2113; 161 L Ed 2d 1020 (2005). Therefore, it is clearly

---

[9] RLUIPA provides, in pertinent part:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2 [42 USC 2000cc], the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion. [42 USC 2000cc-2(b).]

appropriate to examine the United States Supreme Court's precedents when analyzing RLUIPA.

## IV. ANALYSIS

## A. INDIVIDUALIZED ASSESSMENT

The threshold question is whether RLUIPA is applicable to this dispute. The burden is on plaintiff to prove that RLUIPA is applicable. 42 USC 2000cc-2(b). RLUIPA "applies only if one of three jurisdictional tests is first met . . . ." *Midrash Sephardi, Inc v Town of Surfside,* 366 F3d 1214, 1225 (CA 11, 2004); see also *Prater v City of Burnside,* 289 F3d 417, 433 (CA 6, 2002) ("the Church may not rely upon RLUIPA unless it first demonstrates that the facts of the present case trigger one of the bases for jurisdiction provided in that statute"); *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp,* 259 Mich App 315, 326-327; 627 NW2d 271 (2003) ("[i]n order to establish a claim under RLUIPA, a party must establish that at least one of these three jurisdictional elements exists"). RLUIPA states that it "applies in any case in which,"

> (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, *individualized assessments* of the proposed uses for the property involved. [42 USC 2000cc(a)(2) (emphasis added).][10]

---

[10] RLUIPA also "applies in any case in which,"

(continued…)

Therefore, the issue is whether a substantial burden has been imposed in the implementation of a land use regulation under which a government is permitted to make an individualized assessment of the proposed uses for the property involved.

This is not the first time that the phrase "individualized assessment" has been employed. The United States Supreme Court distinguished its decision in *Bowen v Roy,* 476 US 693; 106 S Ct 2147; 90 L Ed 2d 735 (1986), from its decisions in *Sherbert* and *Thomas v Review Bd of Indiana Employment Security Div*, 450 US 707; 101 S Ct 1425; 67 L Ed 2d 624 (1981), on the basis that the latter decisions, unlike *Bowen*, involved "individualized assessments."[11] "The

---

(…continued)

> (A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

> (B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability . . . . [42 USC 2000cc(a)(2).]

However, it is uncontested that A and B are not applicable to the instant case.

[11] In *Sherbert,* as discussed above, the United States Supreme Court held that South Carolina's denial of unemployment compensation benefits to a member of the Seventh-Day Adventist Church who could not find work because her religious convictions prevented her from working on Saturdays abridged her right to the free exercise of her religion. In *Thomas,* the United States Supreme Court held that Indiana's denial of unemployment compensation benefits to a Jehovah's Witness who terminated his employment because his religious beliefs prevented him from participating in the production of weapons abridged his right to the free exercise of his religion.

statutory conditions at issue in [*Sherbert* and *Thomas*] provided that a person was not eligible for unemployment compensation benefits if, 'without good cause,' he had quit work or refused available work. The 'good cause' standard created a mechanism for individualized exemptions." *Roy, supra* at 708. In *Sherbert* and *Thomas*, the Court held that when the government applies individualized exemptions, but refuses to extend an exemption to an instance of genuine "religious hardship," the government must demonstrate a compelling reason for denying the requested exemption. *Id.*

In *Smith, supra* at 884, the United States Supreme Court again emphasized the distinction between governmental action requiring and not requiring individualized assessments.

> The *Sherbert* test, it must be recalled, was developed in a context that lent itself to individualized governmental assessment of the reasons for the relevant conduct. . . . [A] distinctive feature of unemployment compensation programs is that their eligibility criteria invite consideration of the particular circumstances behind an applicant's unemployment. . . . [O]ur decisions in the unemployment cases stand for the proposition that where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of "religious hardship" without compelling reason. [*Id.*, quoting *Bowen, supra* at 708.]

In *Church of the Lukumi Babalu Aye, Inc v City of Hialeah,* 508 US 520, 527; 113 S Ct 2217; 124 L Ed 2d 472 (1993), the United States Supreme Court, against the backdrop of a ritualistic practice of animal sacrifice by practitioners of the Santerian faith, held that a city ordinance that prohibits a person from

14

"unnecessarily . . . kill[ing] . . . an animal" violates the Free Exercise Clause of the First Amendment. The Court explained:

> [B]ecause it requires an evaluation of the particular justification for the killing, this ordinance represents a system of "individualized governmental assessment of the reasons for the relevant conduct . . . ." As we noted in *Smith*, in circumstances in which individualized exemptions from a general requirement are available, the government "may not refuse to extend that system to cases of 'religious hardship' without compelling reason." [*Id.* at 537 (citations omitted).]

"Individualize" is defined as "to . . . consider individually; specify; particularize." *Random House Webster's College Dictionary* (1991). Therefore, an "individualized assessment" is an assessment based on one's particular circumstances. Accordingly, RLUIPA applies when the government makes an assessment based on one's particular or specific circumstances or has in place procedures or practices that would allow the government to make an assessment based on one's particular or specific circumstances. As the Ninth Circuit Court of Appeals recently held, "RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use." *Guru Nanak Sikh Society of Yuba City v Sutter Co,* 456 F3d 978, 986 (CA 9, 2006).

In the instant case, the city adopted a zoning ordinance that applied to the entire community, not just to plaintiff. See *West v City of Portage,* 392 Mich 458, 469; 221 NW2d 303 (1974) ("'[Z]oning ordinances . . . are classified as general policy decisions which apply to the entire community.'") (Citation omitted.)

Concomitantly, if the city had granted plaintiff's request to rezone the property, such rezoning would also have applied to the entire community, not just plaintiff.[12] A decision whether to rezone property does not involve consideration of only a particular or specific user or only a particular or specific project; rather, it involves the enactment of a new rule of general applicability, a new rule that governs all persons and all projects. See *Sherrill v Town of Wrightsville Beach*, 81 NC App 369, 373; 344 SE2d 357 (1986) ("it is the duty of the zoning authority to consider the needs of the entire community when voting on a rezoning, and not just the needs of the individual petitioner"). Thus, if the city had granted plaintiff's request to rezone the property from single-family residential to multiple-family residential, plaintiff could then have sold the property to any third party and that third party could have sold the property to any other third party and any of these parties could have built an apartment complex or any other conforming building on that property. Therefore, the city's decision whether to rezone the property would not have been predicated on plaintiff's particular circumstances or plaintiff's particular project.[13] Even if the city had affirmatively

---

[12] Although a request to rezone a particular piece of property "'may be differentiated on the basis that such a determination is narrowly confined to a particular piece of property,'" *West, supra* at 469 (citation omitted), it still applies to the "entire community." That is, the "entire community" would be bound by the city's decision to rezone or not rezone the property.

[13] Plaintiff's counsel told the trial court that "even at the planning commission level, they don't care what's being built"; "they don't consider a site

(continued…)

16

wanted plaintiff to build an apartment complex on its property, it could not have granted the requested zoning change unless it was also prepared to accommodate all projects falling within the scope of the rezoning. Plaintiff's particular circumstances were simply not determinative of the city's decision whether to rezone, and, thus, the city's decision did not constitute an "individualized assessment" within the meaning of that term.[14] Plaintiff has cited no cases in support of its position that a refusal to rezone property constitutes an "individualized assessment," and we have found none.

Moreover, plaintiff has presented no evidence to suggest that the city has in place procedures or practices that would permit the city to make "individualized assessments" when determining whether to rezone property.

---

(…continued)
plan"; "the site plan itself is irrelevant when it comes to requesting rezoning from R-1 to R-3." Appellant's appendix at 238a, 523a.

[14] Possibly, if plaintiff had requested a variance and the city had refused that request, this might constitute an "individualized assessment." See *Shepherd, supra* at 320 (holding that "[w]hen the Ann Arbor Charter Township Zoning Board of Appeals examined and subsequently denied plaintiff's petition for a variance, an individualized assessment pursuant to 42 USC 2000cc(a)(2)(C) occurred"). A request for a variance is significantly different from a request to rezone. When one requests a variance, one is requesting permission to use the property for a *specific use*. By contrast, when one requests a rezoning, one is asking the city for permission to use the property for *any use* that would be permitted under the new classification. Therefore, when the city considers a request for a variance, it does consider the specific site plan proposed by the landowner. But, when the city considers a request for rezoning, it considers the numerous different uses that would be permitted under the new classification, and it does not consider a specific site plan.

Because the city's refusal to rezone the property did not constitute an "individualized assessment," and because there is no evidence that the city has in place procedures or practices that would permit it to make "individualized assessments" when determining whether to grant requests to rezone property, RLUIPA is not applicable here.

## B. RELIGIOUS EXERCISE

Assuming that RLUIPA is applicable here, the next question is whether the building of an apartment complex constitutes a "religious exercise." The burden is on plaintiff to prove that the building of an apartment complex constitutes a "religious exercise." 42 USC 2000cc-2(b). RLUIPA provides in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the *religious exercise* of a person, including a religious assembly or institution, unless . . . . [42 USC 2000cc(a)(1) (emphasis added).]

"Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 USC 2000cc-5(7)(A). RLUIPA specifically provides that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 USC 2000cc-5(7)(B). A "religious exercise" consists of a specific type of exercise, an exercise of *religion*, and this is not the equivalent of an exercise-- any exercise-- by a religious body. "The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they

18

impose of reverence for his being and character, and of obedience to his will."

*Davis v Beason,* 133 US 333, 342; 10 S Ct 299; 33 L Ed 637 (1890), overruled on other grounds in *Romer v Evans*, 517 US 620, 634; 116 S Ct 1620; 134 L Ed 2d 855 (1996). The United States Supreme Court has explained that "'[t]he "exercise of religion" often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . .'" *Cutter, supra* at 720, quoting *Smith, supra* at 877.[15] The Supreme Court has further held that "[a]lthough RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity. Cf. *Gillette v. United States*, 401 U.S. 437, 457, 91 S. Ct. 828, 28 L. Ed. 2d 168, (1971) ("'The 'truth' of a belief is not open to question"; rather, the question is whether the objector's beliefs are "truly held."' (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965)))." *Cutter, supra* at 725 n 13. Nor, obviously, does RLUIPA bar inquiry into whether a particular belief or practice constitutes an aspect, central or otherwise, of a person's religion.

_____

[15] In *Cutter, supra* at 718, the United States Supreme Court held that "RLUIPA's institutionalized-persons provision, § 3 of the Act, is consistent with the Establishment Clause of the First Amendment." The Court also made clear that "Section 2 of RLUIPA [the land use regulation provision] is not at issue here. We therefore express no view on the validity of that part of the Act." *Id.* at 716 n 3.

The question that we must answer is whether plaintiff is seeking to use its property for the purpose of religious exercise.[16] Obviously, not everything that a religious institution does constitutes a "religious exercise." Plaintiff bears the burden of establishing that its proposed use of the property constitutes a "religious exercise." 42 USC 2000cc-2(b). In the instant case, the only evidence that plaintiff has presented to establish that its proposed use of the property constitutes a "religious exercise" is an affidavit signed by the bishop of the Greater Bible Way Temple. The affidavit states that plaintiff's mission is set forth in its letterhead as follows:

> The Greater Bible Way Temple stands for truth, the promotion of the Gospel of Jesus Christ through the Apostolic Doctrine, and an exceptional level of service to the community. This includes housing, employment, consulting and supports as determined appropriate in fulfilling our Mission.

---

[16] Notwithstanding the inquiry required by RLUIPA into what constitutes a "religious exercise," this Court is extremely cognizant of the difficulties inherent in a judicial body's evaluating the practices of particular religious faiths or assessing the "centrality" of particular religious precepts. In accord, *Smith*, *supra* at 890 ("It may fairly be said that leaving accommodation to the political process will place at a relative disadvantage those religious practices that are not widely engaged in; but that unavoidable consequence of democratic government must be preferred to a system in which each . . . judge[] weigh[s] the social importance of all laws against the centrality of all religious beliefs."); *Lemon v Kurtzman*, 403 US 602, 613; 91 S Ct 2105; 29 L Ed 2d 745 (1971) (expressing concern about fostering an "'excessive government entanglement with religion'") (citation omitted).

The affidavit further states that plaintiff "wishes to further the teachings of Jesus Christ by providing housing and living assistance to the citizens of Jackson."[17]

No evidence has been presented to establish that the proposed apartment complex would be used for religious worship or for any other religious activity. Instead, it appears that the only connection between the proposed apartment complex and "religious exercise" is the fact that the apartment complex would be owned by a religious institution. Generally, the building of an apartment complex would be considered a commercial exercise, not a religious exercise. The fact that the apartment complex would be owned by a religious institution does not transform the building of an apartment complex into a "religious exercise," unless the term is to be deprived of all practical meaning. Something does not become a "religious exercise" just because it is performed by a religious institution. Because plaintiff has not shown that the building of the apartment complex constitutes an exercise in religion, the city's decision not to rezone the property cannot be said to have burdened plaintiff's "religious exercise," and, thus, RLUIPA has not been violated.

---

[17] The bishop's affidavit proceeds to state that "there is a substantial need in the City of Jackson for clean and affordable housing, especially for the elderly and disabled." However, because there is no evidence that the proposed complex would either be limited to housing elderly and disabled persons or be designed to accommodate elderly and disabled persons to any particular extent, it is unnecessary to address whether the building of such a complex would constitute a "religious exercise."

## C. SUBSTANTIAL BURDEN

Assuming, however, that the building of an apartment complex does constitute a "religious exercise," the next question is whether the city's refusal to rezone the property to allow the apartment complex constitutes a "substantial burden" on that "religious exercise." The burden is on plaintiff to prove that the city's refusal to rezone the property constitutes a "substantial burden" on plaintiff's exercise of religion. 42 USC 2000cc-2(b). RLUIPA provides in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a *substantial burden* on the religious exercise of a person, including a religious assembly or institution, unless . . . . [42 USC 2000cc(a)(1) (emphasis added).]

RLUIPA does not define the phrase "substantial burden." However, this is not the first time that the phrase "substantial burden" has been used.

Before deciding *Smith,* the United States Supreme Court held that a "substantial burden" on one's religious exercise that was not justified by a compelling governmental interest violated the Free Exercise Clause. *Jimmy Swaggart Ministries v Bd of Equalization of California,* 493 US 378, 384-385; 110 S Ct 688; 107 L Ed 2d 796 (1990), quoting *Hernandez v Comm'r of Internal Revenue,* 490 US 680, 699; 109 S Ct 2136; 104 L Ed 2d 766 (1989) ("Our cases have established that 'the free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the

burden.'"). The United States Supreme Court's definition of "substantial burden" in its free exercise cases is instructive in determining what Congress understood "substantial burden" to mean in RLUIPA.

In *Sherbert, supra* at 404, the United States Supreme Court held that a "substantial burden" exists when an individual is "force[d] . . . to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."

In *Thomas, supra* at 717-718, the Supreme Court explained:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

In *Lyng v Northwest Indian Cemetery Protective Ass'n,* 485 US 439, 450; 108 S Ct 1319; 99 L Ed 2d 534 (1988), the United States Supreme Court explained that "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not constitute "substantial burdens."[18]

---

[18] Relying on *Lyng,* our Court of Appeals held that "for a burden on religion to be substantial, the government regulation must compel action or inaction with respect to the sincerely held belief; mere inconvenience to the religious institution or adherent is insufficient." *Shepherd, supra* at 330.

Several federal circuit courts of appeal have also defined the term "substantial burden." Although we are not bound by these decisions, *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004), we find them persuasive.

In *Civil Liberties for Urban Believers v Chicago,* 342 F3d 752 (CA 7, 2003), the Seventh Circuit Court of Appeals held that a Chicago zoning ordinance that allows churches as a matter of right in residential zones, but requires them to obtain special use permits in other zones, does not violate RLUIPA. That court explained:

> Application of the substantial burden provision to a regulation inhibiting or constraining *any* religious exercise, including the use of property for religious purposes, would render meaningless the word "substantial," because the slightest obstacle to religious exercise incidental to the regulation of land use-- however minor the burden it were to impose-- could then constitute a burden sufficient to trigger RLUIPA's requirement that the regulation advance a compelling governmental interest by the least restrictive means. We therefore hold that, in the context of RLUIPA's broad definition of religious exercise, a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise-- including the use of real property for the purpose thereof within the regulated jurisdiction generally-- effectively impracticable.[19]

> While [the ordinance] may contribute to the ordinary difficulties associated with location (by any person or entity, religious or nonreligious) in a large city, [it does] not render

---

[19] In *Lighthouse Institute for Evangelism Inc v City of Long Branch,* 100 Fed Appx 70 (CA 3, 2004), the Third Circuit Court of Appeals adopted this same definition of "substantial burden."

impracticable the use of real property in Chicago for religious exercise, much less discourage churches from locating or attempting to locate in Chicago. *See, e.g.*, *Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990) ("Whatever specific difficulties [plaintiff church] claims to have encountered, they are the same ones that face all [land users]. The harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them") . . . . Otherwise, compliance with RLUIPA would require municipal governments not merely to treat religious land uses on an equal footing with nonreligious land uses, but rather to favor them in the form of an outright exemption from land-use regulations. Unfortunately for Appellants, no such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise. [*Id.* at 761-762 (emphasis in the original).]

In *San Jose Christian College v City of Morgan Hill,* 360 F3d 1024 (CA 9, 2004), the Ninth Circuit Court of Appeals held that there was no RLUIPA violation where the city denied the plaintiff's rezoning application.[20] That court explained:

A "burden" is "something that is oppressive." BLACK'S LAW DICTIONARY 190 (7th ed. 1999). "Substantial," in turn, is defined as "considerable in quantity" or "significantly great." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1170 (10th ed. 2002). Thus, for a land use regulation to impose a "substantial burden," it must be "oppressive" to a "significantly great" extent. That is, a "substantial burden" on "religious exercise" must impose a significantly great restriction or onus upon such exercise.

---

[20] We note that the court did not address the preliminary question whether RLUIPA was even applicable to the denial of the rezoning application.

* * *

[W]hile the PUD ordinance may have rendered College unable to provide education and/or worship at the Property, there is no evidence in the record demonstrating that College was precluded from using other sites within the city. Nor is there any evidence that the City would not impose the same requirements on any other entity seeking to build something other than a hospital[21] on the Property. [*Id.* at 1034, 1035.]

In *Midrash Sephardi,* the Eleventh Circuit Court of Appeals held that an ordinance that prohibits churches and synagogues in the town's business district does not impose a "substantial burden" on the exercise of religion. That court explained:

[A] "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct. [*Midrash Sephardi, supra* at 1227.]

In *Adkins v Kaspar,* 393 F3d 559 (CA 5, 2004), the Fifth Circuit Court of Appeals held that requiring the presence of a qualified outside volunteer at prison congregations did not impose a "substantial burden" on the plaintiff's exercise of religion. That court explained:

[A] government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to

---

[21] A city task force concluded that the city urgently needed a hospital and this particular piece of property was the only suitable location in the city for a hospital.

26

significantly modify his religious behavior and significantly violates his religious beliefs. [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed. [*Id.* at 570.]

In *Spratt v Rhode Island Dep't of Corrections,* 482 F3d 33 (CA 1, 2007), which involved a blanket ban against all preaching activities by prison inmates, the First Circuit Court of Appeals asserted:

The district court decided that a "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," citing *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 718, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981); see also *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (applying the *Thomas* standard in a RLUIPA case). Assuming arguendo that *Thomas* applies, . . . Spratt has made a prima facie showing that his religious exercise has been substantially burdened. [*Id.* at 38.]

In *Grace United Methodist Church v City of Cheyenne,* 451 F3d 643 (CA 10, 2006), the Tenth Circuit Court of Appeals held that the city's denial of the plaintiff church's request for a variance from an ordinance prohibiting any entity from operating a commercial day care center in a residential zone did not violate RLUIPA. That court explained:

[T]he incidental effects of otherwise lawful government programs "which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into

27

acting contrary to their religious beliefs" do not constitute substantial burdens on the exercise of religion.  [*Id.* at 662 (citation omitted).][22]

After reviewing the above decisions, we believe that it is clear that a "substantial burden" on one's "religious exercise" exists where there is governmental action that coerces one into acting contrary to one's religious beliefs by way of doing something that one's religion prohibits or refraining from doing something that one's religion requires.  That is, a "substantial burden" exists when one is forced to choose between violating a law (or forfeiting an important benefit) and violating one's religious tenets.  A mere inconvenience or irritation does not constitute a "*substantial* burden."  Similarly, something that simply makes it more difficult in some respect to practice one's religion does not constitute a

---

[22] In *Murphy v Missouri Dep't of Corrections,* 372 F3d 979, 988 (CA 8, 2004), the Eighth Circuit Court of Appeals held that, to constitute a substantial burden, the government policy or actions

> must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion."  [Citation omitted.]

Although the Sixth Circuit Court of Appeals has applied the same test when applying RFRA, *Miller-Bey v Schultz,* 1996 US App LEXIS 6541 (CA 6, 1996), it has not yet addressed the meaning of "substantial burden" under RLUIPA.  The *Murphy* definition of "substantial burden" seems inconsistent with RLUIPA because RLUIPA specifically defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 USC 2000cc-5(7)(A).

"*substantial* burden." Rather, a "substantial burden" is something that "coerce[s] individuals into acting contrary to their religious beliefs . . . ." *Lyng, supra* at 450.[23]

In the instant case, plaintiff argues that the city's refusal to rezone its property to allow it to build an apartment complex constitutes a "substantial burden" on its "religious exercise." Even assuming that the building of an apartment complex constitutes a "religious exercise," the city's refusal to rezone the property so plaintiff can build an apartment complex does not constitute a "substantial burden" on that exercise. The city is not forbidding plaintiff from building an apartment complex; it is simply regulating where that apartment complex can be built. If plaintiff wants to build an apartment complex, it can do so; it just has to build it on property that is zoned for apartment complexes. If plaintiff wants to use the property for housing, then it can build single-family

---

[23] We recognize that some courts have held that a "substantial burden" exists where there is "delay, uncertainty, and expense." See, for example, *Sts Constantine & Helen Greek Orthodox Church v City of New Berlin,* 396 F3d 895, 901 (CA 7, 2005), and *Living Water Church of God v Meridian Charter Twp,* 384 F Supp 2d 1123, 1134 (WD Mich, 2005). However, we reject this definition of "substantial burden" both because it is inconsistent with the United States Supreme Court's definition of the phrase and because it is inconsistent with the common understanding of the phrase "*substantial* burden."

residences on the property. In other words, in the realm of building apartments, plaintiff has to follow the law like everyone else.[24]

"While [the zoning ordinance] may contribute to the ordinary difficulties associated with location (by any person or entity, religious or nonreligious) in a large city," *Civil Liberties for Urban Believers, supra* at 761, it does not prohibit plaintiff from providing housing. "Whatever specific difficulties [plaintiff church] claims to have encountered, they are the same ones that face all [land users]." *Id.*, quoting *Love Church, supra* at 1086. The city has not done anything to coerce plaintiff into acting contrary to its religious beliefs, and, thus, it has not substantially burdened plaintiff's exercise of religion. *Lyng, supra* at 450.[25]

## D. COMPELLING GOVERNMENTAL INTEREST

Assuming that the city's refusal to rezone the property constitutes a "substantial burden" on plaintiff's "religious exercise," the next question is whether it is "in furtherance of a compelling governmental interest." The burden is on defendant to prove that the imposition of the burden on plaintiff is in

---

[24] Plaintiff was aware when it purchased the property that it was zoned single-family residential. Thus, plaintiff's claim that the city's refusal to rezone the property will cause it to lose the money that it invested in the property is meritless.

[25] We note that the lower courts' interpretation of the "substantial burden" provision of RLUIPA would seem to render the "discrimination and exclusion" provision of RLUIPA effectively meaningless because it will almost always be easier to prove a "substantial burden" on one's "religious exercise," as those terms

(continued…)

furtherance of a compelling governmental interest. 42 USC 2000cc-2(b).

RLUIPA provides in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--

> (A) is in furtherance of a *compelling governmental interest* . . . . [42 USC 2000cc(a)(1) (emphasis added).]

After a bench trial on this issue, the trial court held that "this mere concern over zoning [does not] establish[] a compelling State interest." We respectfully disagree. It has long been recognized that "local governments have a compelling interest in protecting the health and safety of their communities through the enforcement of the local zoning regulations." *Murphy v Zoning Comm of the Town of New Milford,* 148 F Supp 2d 173, 190 (D Conn, 2001). "'All property is held subject to the right of the government to regulate its use in the exercise of the police power so that it shall not be injurious to the rights of the community or so that it may promote its health, morals, safety and welfare.'" *Austin v Older,* 283 Mich 667, 677; 278 NW 727 (1938), quoting *State v Hillman,* 110 Conn 92, 105; 147 A 294 (1929). Therefore, a municipal body "clearly has a compelling interest in enacting and enforcing fair and reasonable zoning regulations." *First Baptist*

---

(…continued)
are defined by the lower courts, than it will be to prove discrimination or exclusion. See n 8 *supra*.

*Church of Perrine v Miami-Dade Co,* 768 So 2d 1114, 1118 (Fla App, 2000). "A government's interest in zoning is indeed compelling." *Konikov v Orange Co,* 302 F Supp 2d 1328, 1343 (MD Fla, 2004); see also *Midrash Sephardi v Town of Surfside,* 2000 US Dist LEXIS 22629, *51 (SD Fla, 2000) (holding that "the zoning interests of Surfside may properly be characterized as compelling"). "The compelling state interest and, hence, the municipal concern served by zoning regulation of land use is promotion of health, safety, morals or general welfare." *Home Bldg Co v Kansas City,* 609 SW2d 168, 171 (Mo App, 1980). "[T]he ordinance serves a compelling state interest; the City['s] . . . police power to regulate the private use of the land." *Lyons, supra* at 5-6. "The city has a cognizable compelling interest to enforce its zoning laws. . . . Reserving areas for commercial activity both protects residential areas from commercial intrusion and fosters economic stability and growth." *Chicago Hts v Living Word Outreach Full Gospel Church and Ministries, Inc,* 302 Ill App 3d 564, 572; 707 NE2d 53 (1998); see also *Daytona Rescue Mission, Inc v City of Daytona Beach,* 885 F Supp 1554, 1560 (MD Fla, 1995) (holding that "the City's interest in regulating homeless shelters and food banks is a compelling interest").

In the instant case, the city has a compelling interest in regulating where apartment complexes can be built within the city. As the United States Supreme Court has explained:

> The matter of zoning has received much attention at the hands
> of commissions and experts, and the results of their investigations

have been set forth in comprehensive reports. These reports, which bear every evidence of painstaking consideration, concur in the view that the segregation of residential, business, and industrial buildings will make it easier to provide fire apparatus suitable for the character and intensity of the development in each section; that it will increase the safety and security of home life; greatly tend to prevent street accidents, especially to children, by reducing the traffic and resulting confusion in residential sections; decrease noise and other conditions which produce or intensify nervous disorders; preserve a more favorable environment in which to rear children, etc. With particular reference to apartment houses, it is pointed out that the development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes; that in such sections very often the apartment house is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. Moreover, the coming of one apartment house is followed by others, interfering by their height and bulk with the free circulation of air and monopolizing the rays of the sun which otherwise would fall upon the smaller homes, and bringing, as their necessary accompaniments, the disturbing noises incident to increased traffic and business, and the occupation, by means of moving and parked automobiles, of larger portions of the streets, thus detracting from their safety and depriving children of the privilege of quiet and open spaces for play, enjoyed by those in more favored localities-- until, finally, the residential character of the neighborhood and its desirability as a place of detached residences are utterly destroyed. Under these circumstances, apartment houses, which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances. [*Village of Euclid v Ambler Realty Co,* 272 US 365, 394-395; 47 S Ct 114; 71 L Ed 303 (1926).]

See also *Kropf v Sterling Hts,* 391 Mich 139, 159-160; 215 NW2d 179 (1974) (adopting the above analysis in addressing "why the local zoning board could reasonably restrict multiple dwellings in a residential area"). That a court will defer to zoning authorities and will only overturn a zoning ordinance excluding other uses from a single-family residential area if it is arbitrary or capricious is

evidence of the magnitude of the municipalities' interest in such zoning ordinances. *Kropf, supra* at 161 (holding that "[i]t is not for this Court to second guess the local governing bodies in the absence of a showing that that body was arbitrary or capricious in its exclusion of other uses from a single-family residential district").

In this case, much testimony was presented regarding the city's interest in preserving single-family neighborhoods. Charles Reisdorf, the Executive Director of the Regional Planning Commission, testified:

> [I]n an area where you have a large number of single-family residences, people have made purchases with the expectation that there will be some stability in the neighborhood. For most of us, the purchase of a home is the major expense of our life . . . . And so when you–- when you have something that's incompatible interjected into a neighborhood area, it creates problems and often results in a blighting situation . . . .

Dennis Diffenderfer, a planner who has been with the city's Department of Community Development for nearly 20 years, testified:

> [A]ny time you even add a duplex or a three- or four-unit or a number of buildings that convert to rental, it does have a negative effect on the adjoining neighbors. I can speak not only as a housing professional, but from experiences.

Charles Aymond, who has served as the chairman of the Jackson Planning Commission for over ten years, testified:

> [T]he City has experienced a great deal of blight and destabilization as the result of commercial enterprises . . . or different residential uses coming into what is generally referred to as a higher residential use.

Plaintiff's own architect, James Pappas, testified that if the property was rezoned multiple-family residential, as the plaintiff desires, a 45-foot apartment complex would be permitted and this would be "inappropriate with that neighborhood."

Given the city's general interest in zoning, and the city's specific interest in maintaining the character of this single-family residential neighborhood, we conclude that the city has a compelling interest in maintaining single-family residential zoning and in not rezoning this area of the city.

## E. LEAST RESTRICTIVE MEANS

Given that the imposition of the burden on plaintiff is in furtherance of a compelling governmental interest, the final question is whether a particular governmental action constitutes the "least restrictive" means of furthering that interest. 42 USC 2000cc(a)(1)(B). The burden is on defendant to prove that an action constitutes the least restrictive means of furthering the compelling governmental interest. 42 USC 2000cc-2(b). RLUIPA provides in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the *least restrictive means* of furthering that compelling governmental interest. [42 USC 2000cc(a)(1) (emphasis added).]

In the instant case, plaintiff asked the city to rezone the property from single-family residential to multiple-family residential. In response, the city could have done one of two things-- it could have granted or it could have denied plaintiff's request to rezone the property. The city decided to deny plaintiff's request to rezone the property. That is, the city decided to maintain the single-family residential zoning. There do not appear to be any less restrictive means of maintaining the single-family residential zoning.

For these reasons, we conclude that any burden placed on plaintiff's exercise of religion is in furtherance of a compelling governmental interest and constitutes the least restrictive means of furthering that compelling governmental interest.[26] Therefore, even assuming that RLUIPA is applicable in the instant case, it has not been violated.[27]

---

[26] 42 USC 1988(b) provides, "In any action or proceeding to enforce a provision of . . . the Religious Land Use and Institutionalized Persons Act of 2000 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." For the reasons discussed herein, plaintiff is not a "prevailing party," and, therefore, is not entitled to attorney fees.

[27] As discussed above, in *City of Boerne,* the United States Supreme Court held that Congress, in enacting RFRA, had exceeded its power under § 5 of the Fourteenth Amendment to enact legislation enforcing the Free Exercise Clause because RFRA proscribes state conduct that the First Amendment itself does not. In *Smith,* the United States Supreme Court held that generally applicable, religion-neutral laws that have the effect of burdening a particular religious practice need not be justified under the Free Exercise Clause by a compelling governmental interest. However, "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship'

(continued…)

36

## V. CONCLUSION

RLUIPA applies to burdens imposed by governmental bodies on "religious exercises" in the course of implementing land use regulations under which "individualized assessments" may be made of the proposed uses for the land. An "individualized assessment" is an assessment based on one's particular or specific circumstances. A decision concerning a request to rezone property does not involve an "individualized assessment." Therefore, RLUIPA is not applicable here.

A "religious exercise" constitutes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 USC 2000cc-5(7)(A). However, something does not become a "religious exercise" just because it is carried out by a religious institution. Because the only connection between religion and the construction of the apartment complex in this case is the fact that

---

(…continued)

without compelling reason." *Smith, supra* at 884. Proponents of RLUIPA argue that Congress has the authority to enact RLUIPA because it merely codifies *Smith*. However, the lower courts in the instant case held that, under RLUIPA, a religious institution need not abide by a generally applicable, religion-neutral zoning ordinance unless it is justified by a compelling governmental interest. This seems inconsistent with the Free Exercise Clause as interpreted in *Smith,* which, held that a generally applicable, religion-neutral law does *not* have to be justified by such an interest. Whenever possible, courts should construe statutes in a manner that renders them constitutional. *People v Bricker*, 389 Mich 524, 528; 208 NW2d 172 (1973). Because the lower courts' interpretation of RLUIPA would render RLUIPA unconstitutional, we reject their interpretation and instead adopt the interpretation set forth in this opinion.

the apartment complex would be owned by a religious institution, the building of the apartment complex does not constitute a "religious exercise."

A "substantial burden" on one's "religious exercise" exists where there is governmental action that coerces one into acting contrary to one's religious beliefs by way of doing something that one's religion prohibits or refraining from doing something that one's religion requires. A mere inconvenience or irritation does not constitute a "*substantial* burden"; similarly, something that simply makes it more difficult in some respect to practice one's religion does not constitute a "substantial burden." Because the city has not done anything to coerce plaintiff into acting contrary to its religious beliefs, the city has not substantially burdened plaintiff's religious exercise.

Even if the city did substantially burden plaintiff's religious exercise, imposition of that burden here is in furtherance of a compelling governmental interest, namely, the enforcement of local zoning ordinances, and constitutes the least restrictive means of furthering that compelling governmental interest. Therefore, even assuming that RLUIPA is applicable, RLUIPA was not violated. For these reasons, we reverse the judgment of the Court of Appeals and remand this case to the trial court for the entry of a judgment in favor of defendants.

Stephen J. Markman
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.

S T A T E   O F   M I C H I G A N

SUPREME COURT

THE GREATER BIBLE WAY TEMPLE OF
JACKSON,

    Plaintiff-Appellee,

v                                   Nos. 130194, 130196

CITY OF JACKSON, JACKSON PLANNING
COMMISSION, AND JACKSON CITY COUNCIL,

    Defendants-Appellants.

_____

CAVANAGH, J. (*concurring*).

    I agree with part IV(B) of the majority opinion.  I write separately because I believe it is unnecessary to determine whether defendants made an individualized assessment in this case or whether the statutory test of strict scrutiny was met, because plaintiff failed to show that its petition for rezoning was related to plaintiff's exercise of religion.  Thus, I would reverse the Court of Appeals judgment on that basis and remand to the trial court for dismissal of plaintiff's claim.

                                        Michael F. Cavanagh
                                        Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

THE GREATER BIBLE WAY TEMPLE OF
JACKSON,

　　　Plaintiff-Appellee,

v                                                          Nos. 130194, 130196

CITY OF JACKSON, JACKSON PLANNING
COMMISSION, AND JACKSON CITY COUNCIL,

　　　Defendants-Appellants.

_____

KELLY, J. (*concurring*).

I agree with the order in which the majority opinion interprets the relevant provisions of the Religious Land Use and Institutionalized Persons Act, 42 USC 2000cc *et seq*. I concur in the majority's holding that there was no individualized assessment in this case and therefore that RLUIPA is not applicable.

I write separately because I believe it is unnecessary to discuss (1) whether the building of an apartment complex was a religious exercise, (2) whether the refusal to rezone plaintiff's property substantially burdened the alleged religious exercise, and (3) whether the alleged burden was in furtherance of a compelling governmental interest and constituted the least restrictive means of furthering that interest. The majority's discussion of these issues is mere dicta.

I would reverse the Court of Appeals judgment because RLUIPA is inapplicable in the instant case.

Marilyn Kelly